## Phillips v. Phillips.

May 11, 1943.

324

B J. Bethurum for appellant.

J. S. Cooper and Gladstone Wesley for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

John Phillips and his wife M. A. Phillips, the appellee, and their son L. R. Phillips, the appellant, came to Pulaski county, Kentucky, from Johnson county, Tennessee, in the year 1919 for the purpose of buying a farm in Pulaski county. They contacted G. M. Vanhook of Pulaski county who owned a farm which he desired to sell and after some negotiations the parties reached an agreement to purchase the farm for the price of $9,000, and made an initial payment of $1,500 on the purchase price and executed five purchase lien notes in the sum of $1,100 each, the first one maturing August 25, 1920, and one on the 25th day of August in each suceeding year including 1924, and also assumed payment of a $2,000 indebtedness secured by a mortgage on the land which Vanhook owed the New York Life Insurance Company. Vanhook and his wife executed a deed to the land to John Phillips and appellee conveying to them the land in fee simple title. Just previous to the purchase of the Vanhook farm John Phillips and appellee, had bought another farm in Pulaski county, referred to as the "Science Hill" farm, and they and their son, the appellant, moved to it and appellant lived there with his parents (John and M. A. Phillips, appellee) for about two years and then moved to the Vanhook farm and resided there and used it, apparently as his own, without question or interruption by appellee or anyone until in the early part of the year 1940 when this controversy arose. In the meantime, however, in the year 1920, John Phillips conveyed his interest in the farm to appellee and she thereby became invested with title to the whole farm. Later appellee sold a portion of the farm, receiving $4,100 therefor, and appropriated all the money to her own use but left appellant in possession of the remaining portion of the farm. In the early part of the year 1940 appellee instituted a forcible detainer action seeking to dispossess

appellant of the farm but that action never came to trial. Immediately thereafter appellant filed his petition in equity in the Pulaski circuit court alleging that he was the owner of and in possession of the farm and that appellee was claiming title thereto and casting a cloud upon his title and asked that he be quieted in his title. But being confronted with the fact that his name did not appear in the deed of the farm executed by Vanhook to John Phillips and appellee, and not having any other written contract or agreement for the purchase of the land as between himself and John Phillips and appellee, he then filed his amended petition and counterclaim by which he alleged, in substance, that when he and his father and appellee made the contract for the purchase of the Vanhook farm it was understood and agreed between him and his father and appellee that they would purchase the farm in partnership and he would pay $4,500 of the purchase price and appellee would pay the other $4,500. He stated further that appellee had sold a portion of her one-half interest in the farm for the sum of $4,100, leaving him the holder and owner of his one-half undivided interest in the original farm, and appellee the owner of $400 interest therein.

Appellant further stated that at the time of the purchase of the Vanhook farm he paid the initial payment of $1,500 on the purchase price and a short time thereafter he assumed the payment of the mortgage debt in favor of the New York Life Insurance Company which Vanhook had therefore executed on the farm; that in compliance with his agreement to pay one-half of the purchase price of the farm he paid to Vanhook and the New York Life Insurance Company a total sum of $4,500, and that by a further oral agreement and understanding which he then entered into with appellee she was to execute to him a deed to his one-half undivided interest in the farm, but appellee had put him off from time to time and failed to comply with her promise to make the deed but had instituted a forcible detainer proceeding against him for the purpose of putting him out of possession of the farm and depriving him of his interest therein. He further stated that a short time after the purchase of the farm from Vanhook in the year 1919, he took possession of it and has continuously occupied it and held possession thereof under the oral agreement of purchase from that time until the present and has occupied and used the farm as his own, since said time,

claiming the same and paying the taxes thereon, expecting appellee to make him a deed to his interest therein in conformity with her repeated promises to do so.

Appellant further stated that appellee at one time assured him that she was ready to make the said deed to him but that instead of executing to him a deed she executed a mortgage to him on the farm and delivered the same to him but that before he had time to take the mortgage to the county seat and have it recorded appellee visited his home and when she left she took the mortgage with her saying that she would have the same recorded but that she failed to have it recorded and had destroyed or concealed the same and still refused to make him a deed in accordance with their agreement. He further alleged that by reason of the oral agreement with appellee for the purchase of the farm pursuant to which agreement he paid the sum of $4,500 on the purchase price, and having taken possession of the farm under the oral agreement of purchase, although he is not now in a position to enforce specific performance of the contract (under the provisions of the statute of frauds) and compel appellee to execute to him a deed for the farm, that he is entitled to recover of appellee the sum of $4,500 with interest at the rate of six per cent per annum from the —— day of ———, 1919, until paid and that he is entitled to a lien on the farm to secure him in the payment of the said $4,500 with interest and cost of the action. He further stated that since the making of the said oral agreement for the purchase of the farm as above set out, and since taking possession of it, he had in good faith erected valuable and lasting improvements thereon, consisting of the repairing of buildings, fencing and improving it generally in the amount of $2,000, and that he should recover of appellee the additional sum of $2,000 and is entitled to a lien against the farm to secure him in the payment of that sum. He further stated that after appellee sold her one-half interest in the farm he thereupon took open, notorious, and adverse possession of the balance of the farm and has since claimed the same as his own and has cultivated it, cut and removed timber therefrom and claimed it adversely for more than fifteen years prior to the institution of the action and that he has title thereto by adverse possession. He prayed that he be adjudged the owner of the farm and his title thereto be quieted; or, if the chancellor be of the opinion that he is not entitled to that relief, then he

should have judgment against appellee for the sum of $4,500 which he paid on the purchase price of the farm and the further sum of $2,000 for the improvements made by him thereon and that he be adjudged a lien on the farm for the payment of said sums with interest, cost, etc.

Appellee filed her answer and counterclaim denying all the material allegations of the petition, and by separate paragraphs she pleaded the five-year statute of limitation and laches, and by another paragraph she pleaded as a counterclaim that appellant resided on and used the farm as her tenant and asked to recover of him the sum of $300 per year for seventeen years for rentals. Appellant's reply to the answer and counterclaim consists of a traverse and largely a reiteration of the facts set out in the petition with respect to the oral contract of purchase of the farm and his possession thereof, and in further reply to the plea of the statute of limitations she alleged that under the facts he had during all of said time been a vendee of the property and in possession thereof awaiting a legal conveyance to him of his one-half undivided interest therein and therefore appellee has held the same for his benefit as a continuing and subsisting trust and for that reason the statute of limitations does not apply.

At or about the time the answer was filed, which was about eleven months after the filing of the petition and after appellant had taken a portion of his evidence, by depositions, appellee moved the court to transfer the case to the ordinary docket for "trial of the issues out of chancery." The court sustained the motion and ordered that "this cause be and it is hereby transferred to the ordinary docket of this court," which order, in substance, transferred the whole case to the ordinary docket without reference to trial of any issue of facts.

A jury was empaneled to try the issues and heard the evidence partly by witnesses testifying before the jury and partly by depositions which had theretofore been taken, and the case was sibmitted to the jury under the following instructions:

"If the jury believe from the evidence in this case that the plaintiff, L. R. Phillips, and the defendant, M. A. Phillips, did on or before August 26, 1919, the date of the conveyance of the farm mentioned in the testimony, enter into a contract by the

terms of which L. R. Phillips and M. A. Phillips agreed to purchase said farm as partners for $9000.00, each to contribute $4500.00 on the purchase price and that the said M. A. Phillips should convey an undivided one-half interest in said farm to L. R. Phillips when he had paid $4500.00 of said purchase price and if you shall further believe from the evidence in this case that the plaintiff, L. R. Phillips, complied with said agreement, if any there was, by making payments on said purchase price then the law is for the plaintiff and you should so find; unless you shall so believe from the evidence then the law is for the defendant and you should so find.''

By instruction No. 2 the jury were told that if they found for the plaintiff they should find for him the sum, if any, which they may believe from the evidence that he had paid on the purchase price of the land not to exceed the sum of $4,500. Instruction No. 3 told the jury that nine or more jurors agreeing may find a verdict. No other instructions were offered or given. The jury returned this verdict: ''We, the jury, find for the defendant,'' which, of course, is a general verdict rather than a finding of any particular fact in issue. It is thus seen from the instructions that the court did not submit to the jury the issues relating to appellee's counterclaim, nor the statute of limitations pleaded by the respective parties, nor appellant's claim for improvements made on the farm. These issues are not discussed in briefs of respective counsel and the case is briefed solely upon the issues submitted to the jury, as indicated in the instructions.

It is insisted that the order transferring the case absolutely to the ordinary docket rather than for a finding of the jury on any particular issue of fact or facts, together with the general verdict of the jury, constituted reversible error. In support of this contention the cases of Fornash v. Antrobus, 178 Ky. 621, 199 S. W. 781, and Schweitzer's Trustee v. Schweitzer, 237 Ky. 159, 35 S. W. (2d) 3, and cases therein cited, are relied on. We think the court committed error in transferring the case absolutely to the ordinary docket and submitting the whole case to the jury for a general verdict. There are questions involved which are pertinent to a determination of the case which should have been determined by the chancellor, particularly the question of sufficient con-

sideration to support the mortgage involved, although defending more or less on an issue of fact. Consolidation Coal Company v. Vanover, 166 Ky. 172, 179 S. W. 43, 44; Fornash v. Antrobus and other cases, supra. In the Vanover case we said:

"The action being purely an equitable one, though depending on an issue of fact, it was error on the part of the chancellor to transfer the case itself to the common-law docket, with directions to the jury to return a general verdict. The proper practice in such a case is to order an issue out of chancery and submit only the question of fact to the determination of the jury. In a case like this of a purely equitable character, the verdict of the jury is merely advisory, and is not entitled to the weight of the verdict of a jury in common-law action. In the latter case, the verdict can only be set aside when flagrantly against the evidence; whereas, in a case like this, the chancellor may disregard the verdict and enter judgment in conformity with his view of the weight of the evidence. Bannon v. Patrick Bannon Sewer Pipe Company, 136 Ky. 556, 119 S. W. 1170, 124 S. W. 843."

Furthermore, if it be conceded that appellant's rights were not prejudicially affected by the submission of the whole case to the jury for a general verdict, yet we think the verdict of the jury is obviously against the weight of the evidence, if indeed not flagrantly so, so as to warrant a reversal of the case even though it had been purely an ordinary action. Since the chancellor should have treated the verdict of the jury as advisory, rather than binding, it became his duty to follow the clear preponderance of the evidence. We now proceed to a consideration of the evidence.

The appellant testified, in substance, that it was understood and agreed between him and his father and mother that he and his mother would purchase the Vanhook farm in partnership and he was to pay $1,500 down, and after making the agreement with Vanhook they then went back to Tennessee and sold the farm they lived on there and another farm which he owned consisting of 35 acres which he had bought from his brother about two years previous. He further said that he was to have $1,600 out of the home place in Tennessee which they sold to a Mr. Dowell for $8,500. He said that he brought $1,100 with him from Tennessee and borrowed $400 which

constituted the initial payment of $1,500 he made on the Vanhook farm which he paid by check drawn on his personal account in the First National Bank of Somerset, which check he filed as an exhibit. He said that the deed to the Vanhook farm was made to his father and mother because his mother told him that he might not be able to pay the $3,000 balance of his part of the purchase price and suggested that the deed be made to her and his father and in the event he was unable to pay the balance of his part of the purchase price she would pay back to him the $1,500. He further testified to other payments he made on the farm and for taxes on it which were also made by his personal checks, which were also filed as exhibits. He said that he engaged in the real estate brokerage business in Pulaski county and applied his brokerage commissions to the payment of the $3,000 balance of his part of the purchase price of the farm. He detailed the various real estate transactions, naming the persons, farms, etc., and the amount of brokerage he realized from each transaction. Appellant said his father and mother sold a portion of the farm for $4,100, to which he agreed, but he remained in possession of the rest of it and thereafter his mother told him repeatedly that she would make him a deed to his interest in the farm. He said that on one occasion, when he asked his mother for a deed, she told him to make a settlement with his father and that whatever they agreed on she would "stand by it;" that he and his father and two brothers, Oscar and Monroe Phillips, were working on the farm at the lime kiln and the subject of the deed was brought up and his father said that they would make him a deed and they went to Somerset to the office of W. O. Hays, an attorney, but instead of making a deed they made a mortgage for $4,500 and his mother and father signed and acknowledged it before Mr. Hays. He said that he did not know that it was a mortgage until after it was written and it was explained to him by Mr. Hays, and he accepted the mortgage, since they failed to make a deed, and the mortgage was the best he could get to secure his money. He said he took the mortgage to his home and later his mother came to his home and asked about the mortgage and he told her he had it there and that he was going to have it recorded and she told him she would take it and have it recorded for him and he gave it to her but she never had it recorded and he did not know where it was.

On cross-examination appellant said he had no deed for the land sold in Tennessee but that he helped pay for it and when it was sold he and his mother made a settlement and he received $1,600 as his share of the proceeds of the sale, $1,100 of which was in cash and which he brought to Pulaski county with him. He was asked if his father and mother gave him $1,500 of their money, which he paid on the Vanhook farm as the initial payment which he claims he made, and he positively denied that it was their money and reiterated his previous statement that it was his money which he received as a part of his share of the proceeds of the sale of the Tennessee land. He said he knew about the deed his father made to his mother conveying to her his interest in the land, and his father made the deed "to beat a judgment against him they sent here from down in Tennessee."

George Vanhook testified that when appellant and his father were looking over the farm with the view of purchasing it appellant told him that they were purchasing it in partnership and he made the contract with appellant and appellant made the first payment on it ($1,500) and a later payment of $1,100 and some other small payments, but he did not remember the exact amounts. Monroe Phillips, a brother of appellant, gave his depositions, which were read to the jury, in which he testified that appellant had some money when he came from Tennessee to Kentucky but he did not know how much; that appellant had bought a piece of land from one of his brothers and it was sold by him and John Phillips before they left Tennessee. He said he was present when the settlement testified to by appellant was made between him and his father and it was agreed that appellant had $4,500 in the land and his father told him he would make him safe with a mortgage. He further said, however, that his mother (appellee) was not present at the time this settlement was made but that his father was representing her. Counsel for appellee objected to his evidence, as noted in the depositions, but no exceptions were filed to his depositions nor any objections made to the reading of them to the jury. The witness further stated that he had heard his mother say that she was going to make appellant a mortgage to secure the money he had in the farm. He said appellant had claimed an interest in the Vanhook farm ever since it had been bought.

Lillie Phillips, wife of Monroe Phillips, testified that she heard a conversation between appellant and his mother and appellant "was wanting to be made safe for his money," and his mother said that "if the Lord let her live until morning she would fix up his mortgage," and said she owed him $4,500 and would prepare a mortgage to secure him. The witness further said that she and her husband rented a part of the farm from appellant and lived on it two years at one time and five years at another, making a total of seven years, and that all their transactions were had with appellant and if they ever said anything to appellee about the farm she told them to go to appellant. She said that she and her husband paid all the rents to appellant and apellee and her husband never said anything to them about the rent. She said she had heard appellee say several times that appellant paid $4,500 on the farm and heard her say a number of times that he owned the farm.

Hobart Meece testified that about the year 1938 he went to the farm in question with the view of renting it and while there appellee came to the premises. He told her he wanted to rent the farm and she said that half the farm belonged to appellant and she owned the other half. Riley Dykes testified that he was present and heard the conversation between appellee and Mr. Meece and that Mr. Meece wanted to rent the farm and appellee told him that half the farm was hers. He said he was not paying any particular attention to the conversation and did not know what else was said between Mr. Meece and appellee. Eddie Brinson said that he had a talk with appellee in 1937 about the farm and she said that appellant had a mortgage for $4,500 and was supposed to own one-half of the farm. He was asked what caused her to mention that appellant had a half interest in the farm, and he answered: "I was doing the talking and I said that Luther (appellant) had a nice farm and she said a half belonged to her. They paid $9000 and Luther paid $4500 and the other half was his." Clarence Phillips, a son of appellant, testified that in the year 1936 he lived in the home with appellee (his grandmother) while he was going to school at Science Hill, and in conversation with her about his father he said something about his father owning the farm and appellee said a half interest was his. He further said that he had heard her say on several other occasions that his father owned a half interest in the farm and that he had $4500

·on it and that she had made him a mortgage for a half interest in the farm. Other witnesses for appellant testified to certain minor facts and circumstances which tend to corroborate appellant and his witnesses.

Appellee and her husband, John Phillips, denied that they and appellant bought the Vanhook farm in partnership or that appellant paid any part of the purchase price thereon. They also denied that appellant owned any interest in the land they sold in Tennessee, or that he paid any part of the purchase price thereon, as testified to by him and some of his witnesses. They said that if appellant made any payments on the Vanhook farm or paid any taxes thereon he did so with their money which they furnished him for that purpose, except, however, in answer to a question asked John Phillips as to whether or not appellant paid any of the notes to the New York Life Insurance Company, he answered: "Not that I know of—well, he went to Cincinnati and got some money from one of my girls—he might have paid that." With the exception of the above admission that appellant made a small payment on the insurance company notes, the testimony of appellee and John Phillips contradicts all the material facts testified to by appellant and his witnesses with respect to the farm being purchased in partnership or that appellant owned any interest therein or paid any part of the purchase price thereon, or that they owed him the sum of $4,500 or any other sum. In regard to the mortgage, however, both appellee and John Phillips admitted that they executed the mortgage but denied that it was in consideration of any indebtedness they owed appellant, but the consideration therefor was to keep him from going west and to stay on the farm and support them. John Phillips said appellant did not go west, and insists that he did not support them except to furnish them a small amount of ·corn. When asked about the execution of the mortgage he said he did not want to make the mortgage but his wife did to keep appellant from going west, and that he kept saying that "the other children were all for making money while he stayed there and looked after us." Appellee's testimony was of a similar nature with respect to the execution of the mortgage and the consideration therefor. They did not explain, however, why it happened that the mortgage was for $4,500, exactly one-half of the purchase price of the Vanhook farm and the exact amount appellant claims that he paid on the farm.

Clint Phillips, a son of appellee and John Phillips, testified as a witness for appellee. He was asked if he knew anything about the mortgage executed by his father and mother to appellant at Mr. Hays' office, and in answer to the question he said: "Yes, I took Luther (appellant) to Science Hill in my car: he said he was going to leave if they didn't make him safe for his work on the farm—he said the rest of them was away making money, and they had to make him safe." A number of other witnesses testified for appellee, most of whom were members of the family, and while their evidence is not particularly important yet, so far as it has any bearing on the issues, it tends to corroborate appellee and her husband.

Appellee and John Phillips categorically denied making the statements testified to by many witnesses to the effect that appellant was the owner of a one-half interest in the farm or that he had paid $4,500 or any other sum on the purchase price thereof. But, in view of the large number of witnesses, many of whom were of no kin to the parties and not interested in the results of the litigation, who testified that appellee did make such statements, together with the attendant circumstances, we are impelled to the conclusion, as already stated, that the great preponderance of the evidence, is in favor of appellant on that issue, aside from the mortgage involved, which we will now consider.

It may be noted that according to the evidence of John Phillips, Clint Phillips and perhaps other witnesses for appellee, appellant insisted on his father and mother executing him a mortgage on the land to secure him for his work rather than for any interest owned in the land, or for money he had paid on the purchase price. But even so, this evidence at the least shows that appellant was claiming that appellee owed him an obligation of some nature, whether it be for money paid on the land or for work on the farm, and appellee and her husband recognized this obligation and executed the mortgage in satisfaction therefor, and for the further consideration that he forego his desire and ambition to go west and seek employment or business which might be more remunerative than remaining on the farm. It is admitted that he did refrain from going west and remained on the farm, but it is insisted that he did not support appellee and her husband, except to furnish them a small amount

of corn. But there is no claim that appellee and her husband were at that time or had been in need of appellant's help or support, or that he had refused to carry out that part of the agreement. They merely say that he had not, done so. If it be conceded that such was the agreement, so far as this record discloses appellant may be able, ready and willing to support appellee and his father when necessary or when called upon by them to do so.

Various definitions of consideration are found in the text books and judicial opinions. In Luigart v. Federal Parquetry Mfg. Co., 194 Ky. 213, 238, S. W. 758, 760, the term "consideration" is thus defined:

> "A benefit to the party promising, or a loss or detriment to the party to whom the promise is made. 'Benefit,' as thus employed, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. And 'detriment' means that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise."

Aside from the question of whether or not appellant actually paid the sum of $4,500 on the purchase price of the land, and conceding, arguendo, he did not, yet we think that the evidence, even that of appellee and John Phillips, is sufficient to show that there was a sufficient consideration for the execution of the mortgage which admittedly was for the sum of $4,500. We conclude, therefore, upon the whole case, that the chancellor should have entered judgment in favor of appellant for the sum of $4,500 with interest from October 9, 1941, the date of the judgment, with a lien against the land in question to secure the payment thereof, and costs of the action. Hinton v. Hinton's Ex'r, 239 Ky. 664, 40 S. W. (2d) 296. But, since appellant had the use and occupancy of the farm and collected rents and cut and removed timber therefrom, we do not think it would be equitable and fair for appellee to pay interest on said sum previous to the entry of the judgment.

Wherefore, the judgment is reversed and remanded with directions to enter judgment in conformity with this opinion.