**Scott A. WARNER and Tonya R. Warner, Appellants–Plaintiffs,**

v.

**ESTATE OF Virginia Williams ALLEN, Appellee–Defendant,**

and

**United Farm Family Mutual Insurance Company, Appellee–Third–Party Defendant.**

No. 18A02–0111–CV–759.

Court of Appeals of Indiana.

Oct. 11, 2002.

Ronald K. Smith, Muncie, IN, Attorney for Appellants.

Thomas L. Hulse, Hulse Lacey Hardacre Austin & Shine, P.C., Anderson, IN, Attorney for Appellee Estate of Virginia Williams Allen.

Jeffrey R. Oberlies, Jan N. Campbell, Leeuw & Doyle, P.C., Indianapolis, IN, Attorneys for Appellee United Farm Family Mutual Insurance Company.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellants-plaintiffs Scott A. Warner and Tonya R. Warner (collectively, "the Warners") appeal the trial court's grant of partial summary judgment in favor of appellee-defendant Estate of Virginia Williams Allen ("the Estate"). We affirm.

### Issue

The Warners raise two issues for our review, which we consolidate and restate as whether the trial court erroneously granted the Estate's motion for partial summary judgment.

### Facts and Procedural History

Virginia Williams Allen ("Allen") died on April 2, 2000. At the time of her death, Allen owned a house in Delaware County, Indiana. Allen's daughter, Elaine Fuller ("Fuller"), took possession of the house. On May 18, 2000, a hailstorm caused extensive damage to the slate roof of the house that went unnoticed at the time.

On June 8, 2000, the Warners made an offer to purchase the house for $140,000. The next day, Fuller made the Warners a counteroffer of $142,500. The Warners accepted Fuller's counteroffer on June 10, 2000. The purchase agreement for the sale reads in relevant part as follows:

8. **POSSESSION:**

. . . .

B. **Maintenance of Property**: Seller shall maintain the Property in its present condition until its possession is delivered to Buyer, subject to repairs in response to any inspection. Buyer may inspect the Property prior to closing to determine whether Seller has complied with this paragraph.

C. **Casualty Loss**: Risk of loss by damage or destruction to the Property prior to the closing shall be borne by Seller. In the event any damage or destruction is not fully repaired prior to closing, Buyer, at Buyer's option, may either (a) terminate this Agreement or (b) elect to close this transaction, in which event Seller's right to all insurance proceeds from such damage or destruction shall be assigned in writing by Seller to Buyer.

Appellant's App. at 145. On June 13, 2000, Fuller was appointed personal representative of the Estate. On June 30, 2000, the Warners and Fuller closed the sale of the house.

At some time after the closing, the Warners noticed the roof damage, whereupon they contacted appellee-third party defendant United Farm Family Mutual Insurance Company ("United"), and then Fuller, concerning potential insurance coverage. On the day of the hailstorm, the house was insured by United under a policy originally purchased by Allen.[1] Fuller had terminat-

---

1. According to the terms of Allen's insurance policy with United, hail damage to the covered dwelling was among the perils United insured against. *See* Appellant's App. at 161. In the event of such damage, the insured was entitled to make a claim at any time for the actual cash value of the damaged property. *See id.* at 167. For the purposes of the policy, "actual cash value" is defined as

 the cost of repair or replacement, less an allowance for depreciation. In determining

depreciation, the following factors are taken into consideration:
 1. the observed condition of the property in comparison with new units that are approximately equivalent; and
 2. functional and economic factors that [United] deem[s] relevant.

*Id.* at 154. If the damaged property was subsequently repaired or replaced, then the insured could claim the additional cost of repair or replacement if it exceeded the actual

ed the policy after the sale of the house was closed. The Warners obtained three estimates for repair or replacement of the slate roof, which they forwarded to United. Ultimately, United determined that the damage was covered by the policy and, on September 25, 2000, issued a check for $45,804.84. The check amount was based on the lowest estimate that the Warners had submitted for repair or replacement of the roof and some interior damage to the house. United issued the check to both the Warners and Fuller, apparently because of its uncertainty concerning who was entitled to the proceeds. The check has never been negotiated.

On November 17, 2000, the Warners filed a claim against the Estate for "[d]amage to the residence at 11291 South C.R. 300 West, Muncie, Delaware County, Indiana, which residence was included in the estate herein, said damage occurring in May, 2000: and/or the proceeds of a certain insurance check issued for repair of said damage to the residence." *Id.* at 18. The Estate denied the Warners' claim. On December 13, 2000, the Estate filed a counterclaim for declaratory judgment, naming United as a third-party defendant "for the purpose of determining to whom it is obligated to pay the amounts payable for the claim under [Allen's] policy of insurance." *Id.* at 20–21.

On June 4, 2001, the Estate filed a motion for summary judgment against the Warners and United. On July 30, 2001, the trial court held a hearing on the Estate's motion. On August 17, 2001, the trial court granted the Estate's motion as to the Warners, in an order reading in relevant part as follows:

cash value. *See id.* at 166–67. In the instant case, United determined that the replacement cost of the damaged roof was $45,804.84 and that the actual cash value of the roof was $12,400. In their joint motion for judgment

## C. *No Material Issue of Fact Exists, and the Estate is Entitled to Judgment as a Matter of Law.*

13. On May 18, 2000, the date of the storm, [the Warners] had no insurable interest in the property. The [United] insurance policy was a contract with the insured person, which was [Fuller] (after [Allen's] death), not a policy on the property itself. Therefore, [the Warners] have no interest in the insurance proceeds, only the Estate.

14. [The Warners] claim that the parties had a verbal agreement that [Fuller] would use the insurance proceeds to replace the roof. [The Warners] presented no evidence (at least that the Court could find in the designated materials) to verify this fact, except for request for admissions responses from [United].

15. To oppose the motion, [the Warners] also raise paragraph 8(c) of the sales agreement, which states that [Fuller] bears the risk of loss by damage to the property prior to closing. If [Fuller] does not fully repair damage prior to closing, [the Warners] has the option either to terminate the agreement or to have [Fuller] assign all insurance proceeds to [the Warners]. The Court finds that that this paragraph does not create an issue of fact precluding summary judgment. Paragraph 8 requires [Fuller] to maintain the property in the same condition until possession passes to the [Warners] and addresses what happens if [Fuller] cannot or does not maintain the property "in its present condition." The undisputed evidence is

filed on September 6, 2001, United and the Estate agreed to an entry of judgment in the amount of the actual cash value of $12,400, presumably because the Estate did not intend to repair or replace the damaged roof.

that the property's condition did not change from the date the parties signed the agreement until closing, and so Paragraph 8 does not apply in this case.

### D. *Conclusion.*

16. The motion for summary judgment should be granted. [The Warners] are not entitled to the amounts under [Allen's] insurance policy for damages to the residence that occurred before they purchased the real estate and before they signed the agreement to purchase the real estate. Such proceeds belong to the Estate.

17. The Court makes no decision as to the amount [United] owes to the Estate for the damage to the real estate.

18. This is a partial summary judgment and does not resolve all the issues in the case.

*Id.* at 10–12.

On September 6, 2001, United and the Estate filed a joint motion for judgment against United. On September 7, 2001, the trial court entered final judgment in favor of the Estate against the Warners and United. The trial court's order of final judgment reads in relevant part as follows:

Judgment is hereby entered in favor of the [Estate] and against [United] in the amount of $12,400.00. On August 17, 2001, the Court issued partial summary judgment in favor of the [Estate] and against [the Warners]. Therefore, the clerk is hereby directed to enter final judgment in favor of the [Estate] and against the Warners and [United].

*Id.* at 17. The Warners now appeal.

### Discussion and Decision

The Warners claim that the trial court erred in partially granting the Estate's motion for summary judgment because, they contend, genuine issues of material fact exist with respect to the interpretation of section 8(c) of the purchase agreement and an alleged oral agreement they made with the Estate for distribution of the insurance proceeds.

When reviewing a grant or denial of summary judgment our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only if the evidence sanctioned by Ind. Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. The granting of a motion for summary judgment is inappropriate if the trial court must weigh conflicting evidence to reach a decision. The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

Moreover, we construe the pleadings, affidavits, and designated materials in a light most favorable to the nonmovant and give careful scrutiny to assure that the losing party is not improperly prevented from having her day in court. *Hendershot v. Indiana Med. Network, Inc.,* 750 N.E.2d 798, 803–04 (Ind.Ct.App. 2001) (paragraph format altered and citations omitted). "A trial court's reasoning for entering summary judgment, although unnecessary, is helpful to the litigants and aids our review. However, we are not bound by the findings of the trial court[.]" *Haskell v. Peterson Pontiac GMC Trucks,* 609 N.E.2d 1160, 1163 (Ind.Ct.App.1993) (citation omitted). "Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the

evidentiary matter designated to the trial court." *Fawley v. Martin's Supermkts., Inc.,* 618 N.E.2d 10, 12 (Ind.Ct.App.1993), *trans. denied.* We address each of the Warners' contentions in turn.

### A. Section 8(c) of the Purchase Agreement

 The Warners contend that they are entitled to the proceeds of the insurance policy under section 8(c) of the purchase agreement. We need not address this contention, however, because the purchase agreement has no legal effect under the doctrine of merger by deed, which provides that "[i]n the absence of fraud or mistake, all prior or contemporaneous negotiations or executory agreements, written or oral, leading up to the execution of a deed are merged therein by the grantee's acceptance of the conveyance in performance thereof." *Thompson v. Reising,* 114 Ind.App. 456, 462, 51 N.E.2d 488, 491 (1943). Under this doctrine, any existing contracts between the parties, "if not carried forward into the deed, are extinguished thereby, and no action lies on the contract." *Id.*

 The designated evidence shows that the Estate presented a general warranty deed[2] to the Warners at closing. *See* Appellant's App. at 146. We must therefore conclude that the purchase agreement merged into the deed at closing. As a matter of law, the Warners cannot seek recovery of the insurance proceeds under the purchase agreement.

### B. Oral Agreement

 The Warners contend that after the closing, Fuller promised them the proceeds of the insurance settlement from United to replace the damaged roof. In its motion for summary judgment, the Estate did not address the existence of such a promise; therefore, the burden was on the Warners to designate evidence showing a genuine issue of material fact as to its existence. *See Anderson v. Yorktown Classroom Teachers Ass'n,* 677 N.E.2d 540, 543 (Ind.Ct.App.1997) ("Summary judgment is appropriate if the properly designated evidentiary matter demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.... If the moving party sustains its burden, the nonmovant must respond by introducing specific facts that show a genuine issue for trial[.]") (citations omitted).

To support their contention that a genuine issue of material fact exists concerning the existence of the alleged promise, the Warners point to their responses to certain United requests for admissions. The relevant responses read as follows:

13. [Fuller] as personal representative of [the Estate] and [the Warners] agreed that the roof would be replaced.
*ANSWER:* Admitted

. . . .

15. [Fuller], as personal representative of [the Estate], agreed that [United] could issue payment for the damage to the roof of the residence to [the Warners], listed as co-payees.
*ANSWER:* Admitted

. . . .

18. When [United] issued the replacement cost check on September 25, 2000, [Fuller] as a personal representative of [Allen] and [the Warners] represented to [United] that the roof of the residence would be replaced.

---

2. "A warranty deed is a deed in which the grantor warrants good clear title. The usual covenants of title are warranties of seisen, quiet enjoyment, right to convey, freedom from encumbrances, and defense of title as to all claims." *Windell v. Miller,* 687 N.E.2d 585, 588 (Ind.Ct.App.1997) (citation omitted).

*ANSWER:* Admitted

Appellant's App. at 232–34, 243–45.

We agree with the Warners that these admissions support an inference that Fuller promised to replace the Warners' roof. Nevertheless, "it is well settled that '[n]ot every promise creates a legal obligation which the law will enforce. A promise must be predicated upon adequate consideration before it can command performance.'" *Light v. NIPSCO Indus.,* 747 N.E.2d 73, 77 (Ind.Ct.App.2001), *trans. denied* (2002) (citation omitted).

> Consideration is defined as a "benefit to the party promising, or a loss or detriment to the party to whom the promise is made." *Phillips v. Phillips* (1943), Ky., [294 Ky. 323] 171 S.W.2d 458, 464. A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled. *Id.* A detriment is a legal right the promisee has forborne. *Id.*

*OVRS Acquisition Corp. v. Cmty. Health Servs., Inc.,* 657 N.E.2d 117, 126 (Ind.Ct.App.1995), *trans. denied* (1996). Generally, we will not inquire into the adequacy of consideration. *See Orem v. Ivy Tech State Coll.,* 711 N.E.2d 864, 871 (Ind.Ct.App.1999), *trans. denied* (2000). Here, however, the Warners failed to designate evidence indicating that they gave any consideration whatsoever in exchange for Fuller's promise. Without consideration, Fuller's promise is unenforceable. The Warners failed to meet their burden, and we must therefore affirm the trial court's grant of the Estate's motion for partial summary judgment.

Affirmed.

KIRSCH and DARDEN, JJ., concur.