**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Appellant–Defendant,

v.

**Louis W. MATUSIAK and Susan M. Matusiak, Appellees–Plaintiffs.**

**No. 49A02–0704–CV–361.**

Court of Appeals of Indiana.

Dec. 31, 2007.

Robert S. O'Dell, O'Dell & Associates, P.C., Carmel, IN, Attorney for Appellant.

Karl L. Mulvaney, Dennis F. Cantrell, Barry C. Cope, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BRADFORD, Judge.

Appellant–Defendant American Family Mutual Insurance Company ("American Family") appeals from the trial court's grant of partial summary judgment in favor of Appellees–Plaintiffs Louis W. and Susan M. Matusiak and its denial of American Family's cross-motion for summary judgment. We affirm in part, reverse in part, and remand.

## FACTS

On March 25, 2005, Marc and Wendy Martin contracted to purchase the Carmel home of Louis and Susan Matusiak for $347,500. On April 9, 2005, Brett Partlow inspected the house in question and, *inter alia*, detected no hail damage to the roof. On April 22, 2005, unbeknownst to either the Martins or the Matusiaks, a hailstorm damaged the house's roof. On May 17, 2005, the Martins and Matusiaks closed on the house at the previously-agreed-upon price of $347,500.

At some point in September of 2005, the Martins noticed that several of their neighbors were having their roofs replaced and soon learned that their roof had sustained hail damage as well. The Martins contacted the Matusiaks regarding the roof, and received assurances that the Matusiaks would file a claim with their insurance company and pay the $1000 deductible required by the policy. The Martins subsequently received two estimates for the repair of the roof, one for $7834 and the other for $8643. In the end, American Family denied the Matusiaks' claim, on the basis, *inter alia*, that they had suffered no loss resulting from the hail storm.

On April 4, 2006, the Matusiaks filed suit against American Family, alleging breach of contract and that American Family had acted in bad faith in denying their claim. On September 29, 2006, the Matusiaks moved for summary judgment, and, on December 26, 2006, American Family cross-moved for summary judgment. On March 30, 2007, the trial court granted the Matusiaks' motion for summary judgment and denied American Family's cross-motion for summary judgment. The trial court certified its order for interlocutory appeal,[1] and we accepted jurisdiction.

## DISCUSSION AND DECISION

### *Standard of Review*

When reviewing the grant or denial of a summary judgment motion, we apply the

---

1. The Matusiaks contend that the issue of the trial court's denial of American Family's summary judgment motion is not properly before this court because American Family allegedly "did not attempt to petition the trial court for certification of the order denying its cross-motion for summary judgment" and may therefore only appeal from the trial court's partial grant of summary judgment in favor of the Matusiaks. Appellee's Br. p. 17. The Matusiaks do not, however, point to any indication in the record that this is so, and have therefore waived the issue for appellate consideration. *See* Ind. Appellate Rule 46(A)(8)(a). In any event, Indiana Appellate Rule 14(B) provides only for the certification of *orders* for interlocutory appeal, not individual issues within an order. Here, the trial court certified its order which both (1) granted partial summary judgment to the Matusiaks and (2) *denied American Family's cross-motion for summary judgment*. Finally, given the nature of the issue before us, we fail to see how we could conclude that summary judgment was erroneously granted to one party without also necessarily concluding that it should have been granted to the other, at least in part.

same standard as the trial court. *Merchants Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us the trial court erred. *Id.*

### Denial of Motion for Summary Judgment

Here, the trial court granted partial summary judgment in favor of the Matusiaks and ordered that American Family pay them "$8,643.00 as the cost of the repair of the hail damage to the roof of the House pursuant to the undisputed cost estimate for the repair of the roof that was designated by the Matusiaks as compensatory damages." Appellant's Br. p. 40. American Family contends, *inter alia*, that the trial court erroneously granted summary judgment in favor of the Matusiaks (and erroneously denied its cross-motion for summary judgment) because the Ma-

tusiaks failed to designate any evidence that they suffered a loss. Moreover, American Family contends that its designated evidence establishes conclusively that the Matusiaks did not suffer a loss. In other words, American Family contends that because the Matusiaks sold their house to the Martins for the agreed-upon price in the purchase contract, despite the intervening hail damage, they ultimately bore none of the costs of that damage and therefore suffered no loss. Under the admittedly unusual circumstances of this case,[2] we are compelled to disagree with American Family.

The Matusiaks' insurance contract with American Family provides for two types of coverage in the event of a loss, "actual cash value" and "replacement." The contract sets forth the procedure for obtaining replacement coverage in the event of a loss:

**Procedures to Claim Replacement Coverage.**

If **you** receive an actual cash value settlement for damaged or stolen property covered by replacement coverage and **you** have not reached **your limit, you** may make a further claim under this condition for any additional payment on a replacement cost basis provided:

(1) **you** notify **us** within 180 days after the loss of **your** decision to repair or

---

**2.** Almost precisely five years ago, this court decided *Warner v. Estate of Allen*, 776 N.E.2d 422 (Ind.Ct.App.2002), which presented us with a similar set of underlying facts. In *Warner*, the Warners bought a house from the Estate of Virginia Allen ("the Estate"), only to later discover that the house's slate roof had suffered approximately $45,000 damage in a hail storm prior to closing. *Id.* at 424–25. In the end, we concluded that the Estate was entitled to the insurance proceeds disbursed by the United Farm Family Mutual Insurance Company ("United Farm Family") because a pre-closing agreement that the Estate would

be liable for any pre-closing damage merged into the deed and a post-closing promise to repair the roof was unsupported by consideration. *Id.* at 426–27.

The Matusiaks contend that *Warner* supports their argument in that the sellers ultimately received the insurance settlement even though they had received the full contract price for the house. *Warner*, in fact, is inapposite. For reasons perhaps known only to United Farm Family, it was as willing to pay the Estate as the Warners, even though the Estate no longer owned the house and had no intention of repairing the roof.

replace the damaged or stolen property; and

(2) repair or replacement is completed within one year of the date of loss.

Appellee's App. p. 67.

By the contract's plain terms, an insured may not seek replacement coverage unless he or she first receives an actual cash value settlement for the loss, which did not happen here, as American Family denied the Matusiaks' claim. The question, then, is whether the Matusiaks were entitled to a cash value settlement that they did not receive, which would require them establishing that they suffered a "loss" under the terms of the insurance contract and in the context of cash value coverage.

■ As the Indiana Supreme Court has explained, "[t]he actual cash value policy is a pure indemnity contract. Its purpose is to make the insured whole but never to benefit him because a [loss] occurred."[3] *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 352 (Ind.1982) (citations omitted). So, in order to withstand American Family's cross-motion for summary judgment, the Matusiaks were required to show that a genuine issue existed regarding whether they had been made "unwhole" such that a cash value settlement would place them in the same position they occupied before the hail storm.

The heart of the matter, then, is how a loss in a cash value coverage context is measured, and if the Matusiaks designated evidence that established that they had suffered one. Indiana adopted the "broad evidence rule" in 1982, which "permits an appraiser or a court or a jury to consider any relevant factor" in determining the amount of a cash value loss. *Id.* at 356. In so doing, the *Travelers* court noted that courts had historically applied three other tests: (1) replacement cost without deduction for depreciation, (2) loss of market value, and (3) replacement cost with deduction for depreciation. *Id.* at 355–56. While implicitly rejecting the first test as an appropriate measure of cash value loss,[4] the *Travelers* court acknowledged the shortcomings of the other two tests while, at the same time, concluding that each of them might be relevant, or even dispositive, in the right case.

We find the rationale of the broad evidence to be compelling. It requires the fact-finder to consider all evidence an expert would consider relevant to an evaluation, and particularly both fair market value and replacement cost less depreciation. If the appraiser finds it appropriate under the particular circumstances he may, after weighing both factors, settle on either alone.

---

3. "Replacement cost coverage, on the other hand, reimburses the insured for the full cost of repairs, *if he repairs or rebuilds the building*, even if that results in putting the insured in a better position than he was before the loss." *Travelers*, 442 N.E.2d at 352.

4. We *explicitly* reject straight replacement cost, without a deduction for depreciation, as an appropriate measure of cash value loss. First, as the *Travelers* court noted, cash value coverage and replacement coverage are two different creatures with different aims. *Travelers*, 442 N.E.2d at 352. Were we to allow cash value cost to be defined by actual replacement cost, cash value coverage might as

well not exist in Indiana. Second, *Elberon Bathing*, on which the *Travelers* court relied, specifically rejected straight replacement cost as a measure of cash value loss. *See Elberon Bathing*, 389 A.2d at 442. Finally, the test seems superfluous in light of the replacement-cost-with-deduction-for-depreciation test. In other words, although actual replacement cost might be an appropriate measure of cash value loss in the occasional case (such as in the destruction of a brand-new addition that had not depreciated), the test taking depreciation into account works just as well in those contexts.

*Id.* at 357 (quoting *Elberon Bathing Co. v. Ambassador Ins. Co.,* 77 N.J. 1, 389 A.2d 439, 444–45 (1978)).

█ In this case, we conclude that the relevant designated evidence, as a whole, indicates that the Matusiaks established a cash value loss. The only designated evidence touching on market value is the fact that the Matusiaks received the same price for their house that they bargained for, even though the hail damage had, by all accounts, occurred before closing. As for replacement cost taking depreciation into account, while there is evidence regarding replacement cost of the roof, there is none regarding the degree of depreciation or implying no depreciation at all. We are, however, obligated to consider *all* relevant evidence, and Louis Matusiak's affidavit implies a pledge by Matusiak to pay the costs necessary to repair the roof and that the Matusiaks would give any insurance proceeds to the Martins. American Family's arguments ignore the existence of this pledge. Although this pledge may not rise to the level of a binding contract, in our view this obligation establishes that the Matusiaks have been made unwhole such that they now require indemnity and that they will not benefit from any settlement paid by American Family. In sum, because the Matusiaks established a cash value loss, American Family breached its insurance contract with them when it denied their claim.

█ American Family further argues that the "merger by deed" doctrine extinguishes any contractual rights the Martins or Matusiaks have to the insurance proceeds. This court's recent decision in *Kempf v. St. Paul Reinsurance Co.,* 872 N.E.2d 162 (Ind.Ct.App.2007), *reh'g denied,* rejects this argument. *Kempf* held unanimously that an insurance company cannot use an insured's third-party agreement to sell the insured property as a means to avoid payment on an insurance policy. *Id.* at 166. In other words, American Family cannot use a separate contract, to which it is not a party, to avoid its contractual obligation for the covered loss. In this case, the terms of the insurance contract required American Family to pay the Matusiaks' claim so long as they established a cash value loss (as they did), whether or not they still owned the property. The trial court correctly denied American Family's cross-motion for summary judgment. The only question remaining, then, is one of damages.

█ "The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Rogier v. Am. Testing and Eng'g Corp.,* 734 N.E.2d 606, 614 (Ind.Ct.App.2000). Although it seems entirely possible that the evidence will eventually establish that the Matusiaks' damages equal the replacement cost of the roof, we nevertheless conclude that the issue remains a genuine issue of material fact. We note, at the very least, that there are currently two estimates for the replacement cost of the roof, which are supported by the evidence. This leads us to the conclusion that damages remain a question for the fact-finder. We therefore (1) affirm the trial court's denial of American Family's cross-motion for summary judgment, (2) affirm the trial court's grant of summary judgment in favor of the Matusiaks on the question of contract breach, (3) reverse the trial court's grant of summary judgment in favor of the Matusiaks on the question of damages, and (4) remand for trial on the issues of damages and bad faith only.[5]

---

5. The trial court's denial of the Matusiaks' motion for summary judgment on its bad faith claim was not argued by the parties on appeal, and we therefore decline to address the

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J., and MATHIAS, J., concur.

issue. Additionally, the Matusiaks ask us to dismiss American Family's appeal and/or impose appellate sanctions for filing an Appellant's Appendix that it claims "misrepresents the complete, unvarnished facts of this case" and "required the Matusiaks to expend an unwarranted amount of time to provide the Court with a proper record[.]" Appellant's Br. pp. 33, 34.

Although we acknowledge that Indiana Appellate Rule 50(A)(2)(f) provides, in part, that an Appellee's Appendix must include "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal" and that American Family failed to comply with this provision, we nonetheless decline to dismiss this appeal or impose appellate sanctions. As for the question of dismissal, we note that American Family's omissions were nowhere near as egregious as those of the appellant in *Hughes v. King*, 808 N.E.2d 146 (Ind.Ct.App.2004), whose appendix did not even include *his* motion for summary judgment or designated evidence.

As for sanctions, although Appellate Rule 66(E) allows us, in our discretion, to assess damages "if an appeal, petition, or motion, or response, is frivolous or in bad faith[,]" American Family's appeal is not frivolous and its omissions seem to be more likely the result of a misunderstanding of the Appellate Rules than of bad faith. Instead of requesting dismissal and sanctions, perhaps the better practice would have been to file a Motion for Conforming Appendix with this court, which almost certainly would have been granted, thereby saving the Matusiaks "the cost of completing the work that should have been done by American Family." Appellant's Br. 34.