**Jane DOE, Appellant–Plaintiff,**

v.

**ROMAN CATHOLIC ARCHDIOCESE OF INDIANAPOLIS, Appellee–Defendant.**

**No. 49A02–1107–CT–595.**

Court of Appeals of Indiana.

Nov. 17, 2011.

---

Raymond F. Fairchild, Indianapolis, IN, Attorney for Appellant.

John S. (Jay) Mercer, Mercer Belanger, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Jane Doe reported that she had been sexually abused by a Roman Catholic Priest when she was a teenager. Doe is now approximately fifty years old, and in accordance with church policy, The Roman Catholic Archdiocese of Indianapolis (Archdiocese) paid for all of Doe's therapy and counseling fees for nearly eight years. At some point, the Archdiocese determined that some of Doe's counseling sessions were not helping Doe with her recovery. One of the health providers agreed to reduce the frequency of the counseling sessions and the Archdiocese decided to reduce its payments accordingly. Doe brought suit against the Archdiocese and the trial court determined, among other things, that the Archdiocese was voluntarily paying for Doe's counseling sessions out of a "moral obligation" to do so. Thus, the trial granted summary judgment in the

Archdiocese's favor and determined that it had no legal responsibility to continue paying all of Doe's continuing therapy costs. We agree with the trial court.

Appellant-plaintiff Jane Doe appeals the grant of summary judgment in favor of appellee-defendant Archdiocese, claiming that a contract obligated the Archdiocese to make those payments and that the Archdiocese engaged in tortious conduct when it reduced the amount of therapy sessions that it had initially agreed to pay. Doe also maintains that a constructive trust should be established in accordance with equitable principles because the Archdiocese breached a fiduciary duty that it owed to her.

In short, Doe argues that the trial court erred in determining as a matter of law that the Archdiocese did not owe her a duty to continue paying for all of the counseling sessions. Concluding that summary judgment was properly entered for the Archdiocese, we affirm.

### FACTS

In June 1999, Doe's husband met with several church officials to discuss instances of alleged sexual abuse that a former priest from the church purportedly inflicted upon Doe when she was a teenager. Doe was thirty-seven or thirty-eight years old at the time of the June meeting. During the conference, church officials discussed the Archdiocesan policy with Doe's husband that provides for the payment of counseling fees and therapy sessions for victims of childhood sexual abuse.

Approximately three months later, Doe and her family again met with church officials and made a demand for $200,000 to compensate for her injuries. In response, the Archdiocese denied liability, but its representatives again explained that it would pay for Doe's out-of-pocket counsel-

ing and treatments. Later in August 1999, the Archdiocese received a letter from an attorney, indicating that he was representing Doe in the matter.

On April 2, 2001, the Archdiocese's Chancellor wrote Doe and her family, indicating that it would pay for therapist and counseling fees as a result of "abuse by a minister of the church." Appellant's App. p. 16–18, 17. At some point, the Archdiocese received treatment plans from Doe's medical providers, and the Archdiocese began making payments to providers in accordance with church policy. The entire amount of each provider's bill was paid based on Doe's representation that she had no health insurance and that she, personally, had paid 100% of those expenses. The Archdiocese continued to pay Doe's counseling fees for many years.

Later in April 2002, Doe's husband again wrote the Archdiocese requesting a lump sum payment. In response, the Archdiocese indicated that it would continue to make payments for the counseling costs in accordance with church policy. On at least one other occasion, the church rejected Doe's claims for additional compensation, but it continued paying her counseling and therapy expenses.

In November 2006, the Chancellor became concerned that Doe had been in treatment for several years, but, apparently, the treatment plans demonstrated no signs of recovery. As a result, the Chancellor contacted Doe's providers and inquired about the treatment plans and the possibility of limiting future payments. The Chancellor shared Doe's treatment plans with other mental health professionals who provided input on the plans.

Thereafter, the Chancellor wrote one of the providers and presented questions and concerns about Doe's care and treatment. The Chancellor's letter stated, among other things, that after paying fees of nearly $100,000 for Doe's care over a period of eight years, a new plan should be implemented. That provider agreed to begin a reduction in the frequency of Doe's therapy sessions. And beginning in July 2007, the Archdiocese mandated that Doe's psychotherapy sessions be reduced from twice weekly to one session per month.

On August 19, 2008, Doe filed suit, alleging, among other things that the Archdiocese was in breach of contract. Doe asserted that the Archdiocese's proposal to reduce the therapy sessions was against the medical advice of Doe's psychiatrist and therapist. Thus, she maintained that, as a consequence of the Archdiocese's breach of its agreement to pay for necessary therapy, she has suffered pain and suffering, mental anguish, and increased medical expenses. Doe further claimed that the Archdiocese breached its fiduciary duty to her by failing to fulfill its alleged unconditional promise to pay for her psychological testing in accordance with its own written church policy. As a result, Doe maintained that the Archdiocese should be compelled to continue to pay the amounts that it had initially and voluntarily agreed to make.

On November 2, 2009, the Archdiocese filed a motion for summary judgment claiming, among other things, that there was no contract obligating it to pay for Doe's therapy because there was no consideration to create an enforceable contract. The Archdiocese also pointed out in its motion that Doe's letter of August 11, 2000, acknowledges that the Archdiocese had "no legal responsibility at this time." Appellant's App. p. 60.

In the alternative, the Archdiocese claims that even if there was a contract, it was terminable at will by any party because no termination date was included in the purported agreement. The Archdio-

cese also asserts that Doe's claim for breach of fiduciary duty fails as a matter of law because it never had that type of relationship with Doe. In fact, the Archdiocese points out that the two were always adversaries, and she had retained legal counsel to provide guidance on her dealings with the Archdiocese.

Following a hearing, the trial court granted the Archdiocese's motion for summary judgment, concluding that there are no grounds upon which the Archdiocese could continue to be forced to pay for all of Doe's future counseling sessions. Thus, the trial court decided that the Archdiocese should prevail because it was voluntarily paying for counseling only "out of a moral obligation." Appellant's App. p. 10–11.

Doe now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court. *Pfenning v. Lineman*, 947 N.E.2d 392, 397 (Ind.2011). Specifically, we must decide whether there is a genuine issue of material fact that precludes summary judgment, and whether the moving party is entitled to judgment as a matter of law. *Id.* After the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Id.* All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). Our review of a summary judgment motion is limited to those materials that are designated to the trial court. *Id.*

### II. Contract Claim

■ Doe argues that that the trial court erred in granting the Archdiocese's motion for summary judgment primarily because the Archdiocese breached its obligation to continue paying for all of her therapist and counseling fees. Doe contends that the Archdiocese should have continued to pay because it was both legally and morally responsible for it to do so.

At the outset, we note that the Archdiocesan "Policy on Care of Victims Sexual Misconduct" (Policy) provides for "the general courses of action that may be taken by the chancellor." Appellant's App. p. 31. And one course of action described in the policy includes offering victims and/or the family "appropriate counseling and spiritual direction, as needed." *Id.* However, a portion of the Policy makes it clear that

4. This statement of policy does not constitute a contractual undertaking of any nature of the payment of any amount to any person, but is an exoteric statement for guidance of the resource team of the Archdiocese. In all cases, the Archdiocese expressly reserves the right to withhold or change the terms of any benefits payable pursuant to this statement of policy or any other arrangement with victims, in the sole discretion of the Archdiocese.

Ex. 8. And, as mentioned above, Doe's husband expressly acknowledged in his letter of August 11, 2000, that the Archdiocese's response was based upon its moral obligation. More specifically, a portion of that letter acknowledges that Doe understood that "the archdiocese has *no legal responsibility* at this time, but it seems to me that when the loss due to the actions of a representative of the archdiocese is so evident and measureable, a moral respon-

sibility remains to compensate for that loss." Appellant's App. p. 8 (emphasis added).

 As the Archdiocese points out, a promise must be predicated upon adequate consideration before it can command performance. *Warner v. Estate of Allen*, 776 N.E.2d 422, 428 (Ind.Ct.App.2002). And a moral obligation to perform an agreement does not provide sufficient consideration to support the enforcement of an agreement nor does it create an enforceable contract. *Schnell v. Nell*, 17 Ind. 29, 32 (Ind.1861).

In this case, while the letters that the Archdiocese sent to the Does express an intent to assist them with counseling costs, that correspondence does not amount to a contract to provide them unlimited care and treatment at its expense. Therefore, the designated evidence establishes that there was no enforceable contract in this instance, and Doe's claim fails on this basis.

### III. Tort Claim

██ Although Doe claims that the Archdiocese committed a tort in July 2007 when it "arbitrarily reduced" the counseling session payments, Appellant's Br. p. 10, it is undisputed that the Archdiocese is not a medical provider and has no ability to make health care decisions for Doe. Put another way, the only decision that the Archdiocese made on July 3, 2007, was in regard to the future amounts that it intended to reimburse a particular provider for Doe's counseling sessions. In short, the decision regarding whether Doe would continue care and treatment or the frequency of care rested with Doe and her medical providers.

Indeed, the designated evidence revealed that health insurance had become available to Doe for her care and treatment. Moreover, the reduction of payments to Doe's provider by the Archdiocese was not a decision to stop treatment. Instead, it was a decision to reduce the frequency and amount that the Archdiocese would reimburse the provider. In fact, no other changes were made with regard to the reimbursement of the other providers who rendered care to Doe. In short, Doe has failed to establish any tort liability on the part of the Archdiocese.

### IV. Breach of Fiduciary Duty

██ Finally, Doe contends that the Archdiocese breached its fiduciary duty to pay the full amount of her counseling and therapy fees. Doe asserts that a fiduciary relationship was created when the Archdiocese undertook a duty to pay for the therapy sessions, and the Archdiocese breached its fiduciary duty when it arbitrarily decided that it would no longer pay the entire amount of the counseling sessions.

 We initially observe that a fiduciary relationship exists when a confidence is reposed by one party in another with resulting superiority and influence exercised by the other. *Drudge v. Brandt*, 698 N.E.2d 1245, 1250 (Ind.Ct.App.1998). In a fiduciary relationship, one party places a special trust and confidence in a dominant party and it is presumed that a transaction entered into during such a relationship is not at arm's length. *Strong v. Jackson*, 777 N.E.2d 1141, 1148 (Ind.Ct.App.2002).

In light of the language above, the designated evidence does not support a determination that the relationship between Doe and the Archdiocese was ever founded upon or evolved into a fiduciary relationship. When Doe initially met with the Archdiocese representatives in August 1999, she made a claim for damages in the amount of $200,000. And Doe's next communication with the Archdiocese after that meeting was a letter to the Archdiocese from her attorney.

The pastoral response that the Archdiocese offered to Doe regarding the payments was explained to Doe's counsel. And there was additional correspondence between the lawyers regarding the payments that the Archdiocese would make to the providers. The fact that Doe and her family retained legal counsel to represent their interests indicates that they did not place their trust or confidence in the Archdiocese. And from 1999 until the lawsuit was filed, Doe maintained an adversarial relationship with the Archdiocese as represented by the number of occasions that Doe made demands for payment.

In sum, nothing in the record supports a conclusion that there was a fiduciary relationship between Doe and the Archdiocese. Doe did not place any special confidences in the Archdiocese or otherwise seek out a confidential relationship. In fact, Doe maintained an adversarial relationship and consulted with attorneys to provide her with guidance concerning her dealings with the Archdiocese. Therefore, because no fiduciary relationship existed, there can be no breach of fiduciary duty. As a result, the trial court properly entered summary judgment for the Archdiocese with regard to this claim.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.