JUDGE LINDSAY
delivered the opinion of the court.
Morgan Hopson, of Trigg County, died in the latter part of the year 1857, having first made and published his last will and testament.
The latter portion of the 6th clause of said will is in these words: “I give to my son Joshua Hopson fifteen hundred dollars extra out (of) my personal estate; and the balance of the money arising from the sale of my personal estate, after paying my just debts, I desire that it be equally divided between my children. My slaves I desire shall descend in accordance with my deed of gift heretofore made, which is on record in the clerk’s office of the Trigg County Court.”
At the time this will was written the testator had three living children — Joshua Hopson, whom he appointed his executor; Mildred T. Johnson, wife of the appellee J. L. C. Johnson; and Elizabeth Shipp, now deceased, then the wife of the appellee W. M. Shipp. Two of the testator’s children had previously died, leaving issue; viz., William Hopson and Isabella Thompson.
The executor proceeded to execute the will; and upon a settlement made by him with the Trigg County Court on the 25th of April, 1864, it was ascertained that the net amount then in his hands, after deducting the “ fifteen hundred dollars extra” .devised to him, was the sum of $15,904.90. This amount he distributed among the three living children, of which he was one, and the issue of the son and daughter who had died before the will of their ancestor was written, giving *646 to each living child and to the representatives of each of the dead children one fifth of the net surplus of the personalty.
A little more than two years thereafter the executor succeeded in collecting the further sum of $2,677.59 on a claim which seems to have been regarded as worthless.
In 1867 Johnson and wife and Shipp and wife instituted separate suits in the Trigg Circuit Court, setting up these facts, and claiming that under the provisions of the will of Morgan Hopson the two femes were entitled each to one third of the surplus of his personal estate, and that the executor was responsible to them for the difference between the one fifth they had theretofore received and the one third to which they were entitled.
The executor, one of the appellants, by his answer to the two actions, which were consolidated, raised the issue as to the proper construction of the will, and alleged that he paid out to the children of his deceased brother and sister in obedience to what was understood by all the parties in interest to be the desire and intention of their father, and that these payments had been made with the knowledge, consent, and approbation of the plaintiffs in the two actions; that they had set up no claim under the will to more than one fifth each of the said surplus; and that by reason thereof they were estopped from claiming as against him any portion of the amounts paid over to the children of William Hopson and Isabella Thompson.
The circuit court held that the three children of the testator living at the time his will was written were entitled to the entire surplus of the personal estate, but that appellees were estopped from claiming against the executor any other or greater amount than remained in his hands undistributed, and rendered judgment in favor of Shipp as survivor of his wife, who had died pending the action, and of Johnson and wife, for the sum of $1,338.29 each, the entire net amount *647 remaining in the executor’s hands; and from this judgment both the plaintiffs and defendants have appealed.
The settlement of the question as to whether or not the three living children were entitled to the entire surplus of the personalty must depend upon the construction to be given to the term “children” in the clause of the will heretofore quoted.
It seems that the testator, at the time his will was written, was fully advised of the death of both William Hopson and Mrs. Thompson; consequently it is clear that he could not have intended to embrace them as individuals in the class of persons taking under the devise in question. And if their children can take what would have been their respective shares had they been living, it must be because of the fact that the term “ children,” as used by the testator, is comprehensive enough to include also his grandchildren.
Ordinarily there is no warrant for thus enlarging the term, and it will not be done except where the will would otherwise be inoperative, or “where the testator has shown by other words that he did not use the word in its ordinary and proper meaning, but in a more extended sense. (Churchill v. Churchill, 2 Metcalfe, 496, and authorities cited; Sheets v. Grubb’s ex’r, 4 Metcalfe, 341.) And none of the statutory provisions upon the subject of devises can be so construed as to abrogate or modify this well-established rule of construction, nor has this court so held in any case.
It is clear that the signification of the term need not in this instance be extended to make the will of the testator operative as to his personal estate;, and a careful scrutiny of the entire instrument satisfies us that the testator fully understood the ordinary and popular meaning of the term used, and that he intended by its use to convey the idea which would naturally and ordinarily be conveyed by the language chosen.
*648 This case differs materially from that of Dunlap v. Shreve’s ex’rs, 2 Duvall, 334. In that case the birth and existence of the party claiming under the will were unknown to the testator, and hence she could not have been intentionally pretermitted; and the court, in its opinion, accounts for the extended signification it gave the term children by saying “that, according to the spirit and context of the will and the most consistent interpretation of the legatory clause under which the appellant claims, fortified by the object of the statutory provisions quoted, the testator intended by children unnamed issue or descendants of dead parents.” No such intention being manifested by the will of Morgan Hopson, according to its spirit and context, the court below did not err in adjudging that under the same the grandchildren of the testator took no part of the personal estate.
The next question, which involves the application of the doctrine of estoppel, in a case like this, presents greater difficulties.
From the facts presented by the record there can be no doubt but that all the parties in interest regarded the descendants of Win. Hopson and Mrs. Thompson as having the right, as representatives of their deceased parents, to share with the living children of thfe testator the surplus of the personal estate. The will was so construed by the counsel for the executor, and also by attorneys representing the appellants prior to the institution of these suits. The action of the executor in paying out the surplus, and the fact that he was distributing it as fast as practicable in five equal shares, was made a matter of public record in the proper office, and this record was examined by the attorney representing the appellants, and the facts exhibited thereby reported to them; and while some slight mistakes in the settlements of the executor were discovered and corrected, no objections whatever were raised to the manner in which the distribution was being made.
*649 It is evident that for a period of nearly ten years the parties and their counsel were laboring under a mutual mistake as to the rights of the three living children of the testator; and it is further evident that while laboring under this mistake the executor, with the knowledge, consent, and approbation of the appellees, paid out to the heirs of Wm. Hopson and Isabella Thompson, during the five years next preceding his settlement in April, 1864, between six and seven thousand dollars of money belonging to himself and his two sisters, Mrs. Shipp and Mrs. Johnson.
There can be no doubt but that the executor acted with the utmost good faith, and that he and the appellees conscientiously believed that he was executing to the letter the will of their father. Under such circumstances can the executor in a court of conscience be held accountable for the mutual mistake of himself and those complaining ?
It is the peculiar province of courts of equity to correct or to relieve against mistakes, but such relief will not be granted to the party who caused the mistake, when to correct it would shift the loss upon another. (McKee v. Hoover, 1 Mon. 34.) And for a like reason, where two or more persons have by mutual mistake suffered loss, relief will not be given to a portion of the parties by shifting the entire loss upon one, unless it can be shown that he was in some degree responsible for the existence of the mistake. It is true that where money has been paid under a clear and palpable mistake of either law or fact, without cause or consideration, and which in conscience ought not to be retained, it may be recovered back from the party to whom it was paid. But this is not a proceeding against the parties to whom the money was paid, but against an innocent party through whose instrumentality the payments were made.
Without deciding whether or not the doctrine of estoppel can be made to apply to a case like this, we do decide that *650 the payments to the heirs of William Hopson and Isabella Thompson were, in legal contemplation, the joint payments of the parties entitled to the surplus of the personal estate of the testator, made by the appellant, Joshua Hopson, with the knowledge, consent, and approbation of the appellees; and that while they may have their actions against the parties to whom the money was paid to recover it back, if not barred by limitation, neither one of the parties making the payments can recover any portion of the amounts paid from the others.
From this view of the law it results that the court below erred in adjudging to appellees, Shipp and Johnson and wife, the entire amount remaining in appellant’s hands undistributed. Said amount should have been equally divided between the three parties entitled thereto.
For this reason the judgment is reversed upon the appeal and affirmed upon the cross-appeal, and the cause remanded for further proceedings consistent herewith.