## Allen Lumber Company v. Howard.

(Decided June 8, 1934.)

JAMES H. JEFFRIES and JAMES SAMPSON for appellant.
J. C. BAKER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This action was brought by O. M. Howard against the Allen Lumber Company, of Middlesboro, Ky., the present appellant, to recover $313.68 and interest claimed paid it by mistake. The defendant by answer and counterclaim denied owing the claim and sought dismissal

of the petition and a judgment upon counterclaim against the plaintiff for the sum of $436.74. The pleadings presenting equitable issues, the case was transferred to equity, where it was prepared and tried as a suit in equity. Upon its final submission, judgment was given for the plaintiff for the relief sought and the defense and counterclaim of defendant rejected.

Complaining of this judgment, the defendant has appealed.

The facts out of which this litigation arose are undisputed and it is agreed are substantially as set out in appellant's brief, which may be summarized as follows: The appellee, Howard, being the owner of certain real estate in Harlan, Ky., contracted with the firm of Crider & Dunavent for the construction of certain building improvemnts on it, for which in September, 1927, he owed it an agreed balance of $1,283. Also, these contractors were at the same time indebted to the appellant lumber company for a like or larger amount. Looking to the satisfaction of these accounts, Howard—upon the request of Crider & Dunavent—agreed that he would execute it his note for the $1,283 owing it, which it would in turn indorse over to its creditor, the Allen Lumber Company, as a payment upon its account.

Pursuant to such understanding, Howard on September 27, 1927, called by the office of its attorney, Mr. G. A. Eversole, to execute the agreed note. As Mr. Eversole was advised at the time that his client, Crider & Dunavent, intended to indorse the note over to one of its creditors as a payment upon account, he wrote in the upper left-hand corner of the note only the figures $1,283 (for which amount he knew and was told the note was to be executed) when it was in such incomplete form signed by Howard. Thereafter Mr. Eversole wrote in the name of Crider & Dunavent, as payees, and by an admitted error and inadvertence also wrote into the body of the note as the amount for which it was executed the words "fifteen hundred and eighty-three dollars," or for a larger amount by $300 than authorized. The note was in February, 1928, indorsed by the payees over to the lumber company in the following form:

"$1,283 00/100

"Fifteen months after date I promise to pay to the order of Crider & Dunavent, B. B. Crider

and Earl Dunavent Fifteen Hundred Eighty Three and no/100 Dollars with interest from date till paid by installment of fifty dollars per month after maturity.

"Value received
"No ——— Due ———          O. M. Howard
"Int to June 17-1931   33 00
                        "Oct. 12-31   $345.00"

Upon indorsement of this note by Crider & Dunavent to the appellant as a credit upon its account owing the Allen Lumber Company, the latter credited its account with $1,283, that being the amount for which it understood the note was payable, and placed it in its collection file. The note was afterwards indorsed with the monthly payments as made by Howard thereon, amounting to some $1,804 in 1932, when he ceased to make them. In the following February, 1933, the appellant wrote Howard, notifying him that unless he paid the balance of the principal and interest past due upon his note, it would be placed with an attorney for collection. Howard replied, requesting that it advise him as to what was the balance of principal and interest owing upon the note as shown by its records and further stated that while he was anxious to settle the matter, he did not have the money with which to do so and would like to sell them upon the debt a house and lot which he had in Harlan, Ky., for $750. After an examination of the property, the company declined to take it in at the price named.

Later upon being advised by appellant that the balance owing by him upon the note it held was $834.24, he answered offering it again the said house and lot at $650 and stating that he would also execute it his note for the then unsatisfied balance of $184.24, payable $20 monthly. The company advised him of its acceptance of this propositon, when he executed it a deed to the property and his note for $184.24, upon receipt of which the company returned him his original note.

Upon receiving it and discovering that the company had, in requiring him to thus pay $834.24 as the balance due upon the note, charged him such amount as upon one given for $1,583 or $300 more than the amount of $1,283, for which it was understood it was given, and had also charged him by so doing some $173 more interest upon the note than was owing when computed

upon its rightful amount for which executed, he at once called upon defendant for its correction of the over-charge. Failing to secure the claimed rightful adjust-ment of the matter, by restitution of his admitted over-payment made it, he visited and conferred with appel-lant in Middlesboro and exchanged several letters with it in regard to the matter, but the company refused to do more in the way of making restitution of the over-charge than to offer to return him his new note for $184.24 and deed him back the house and lot and take from plaintiff his note covering the sums of $128.10 principal and $208.22 interest, or $336.32, to be secured in its payment by a mortgage on the property redeemed him.

Howard, refusing to accept such offer of restitu-tion, which required him to take back the property, filed his action as stated, seeking recovery against it of the sum of $313.68, representing the overpayment made ap-pellant upon the note as one for $1,583.

It is further admitted that after the indorsement over to the appellant of the note in question, the dis-crepancy between the statement thereof made by the figures ($1,283) and its statement made by the written words ($1,583) was corrected by appellant's changing the figures to $1,583, so as to correspond with its writ-ten amount. In justification of its making this change, the appellant contends that under section 3720b-17 of the Statutes providing that where the sum payable in a note is expressed in words and also in figures and there is a discrepancy between the two, the sum denoted by the words shall be the sum payable, it was authorized to change the figures so as to correspond in their amount with that expressed in its words as payable; but that, even if the note were treated as being one for the amount expressed by its figures of $1,283, with the re-sult that there was an overcharge to the plaintiff of $300 principal and $97.50 interest thereon, after deduct-ing such an amount from $834.24 found due upon it as unpaid principal and interest computed upon the note as being for $1,583, there yet remained owing it by plaintiff the sum of $436.74, after deeding back to plain-tiff the house and lot which it bought only for the pur-pose of applying its sale price as a credit upon the mis-taken balance of $834.24, treated as due through their alleged mutual mistake. Appellant so pleading ten-dered back the deed to the house and lot and counter-

claimed against the plaintiff for the amount of $436.74, with a lien upon the returned property for its payment.

The plaintiff by reply denied that the property was sold and conveyed by him to appellant through mutual mistake or that it was entitled to have a rescission of the deed adjudged upon such grounds, with the right resulting therefrom of recovering against him the amount sought of $436.74 upon its counterclaim. A rejoinder completed the issues.

Upon final submission of the cause upon the pleadings, proof, and exhibits filed, the court adjudged that the plaintiff recover of the defendant $313.68 with interest and costs and rejected the defense and counterclaim of appellant.

Attacking the propriety of this ruling, the appellant has appealed.

The appeal presents for our review but two questions—one, the right of the plaintiff (the present appellee) to recover of the defendant (the present appellant) the amount adjudged him as an overpayment made by him by mistake as to the true balance due upon his note; the other, the right of the appellant to have a rescission of the deed executed by plaintiff to him as being one made through mutual mistake of the parties.

As to the first, it is apparent from the summary above given of the pleadings and proof that the note in question was executed by plaintiff to his creditor, Crider & Dunavent, for the sum of $1,283, and that it was indorsed over to the appellant as a note payable in such amount in February, 1928. It is equally clear that the appellant acquired the note with full knowledge of the circumstances under which it was given and that it was assigned and acquired by it as a note for $1,283 only, and that the appellant so received it and made entry on its books, crediting the amount of its debtor Crider & Dunavent with the sum of $1,283, for which amount it was assigned appellant. Under such circumstances and admitted facts, section 3720b-17 of the Statutes relied upon by the appellant has no application. The said section provides that where an ambiguity occurs upon the face of a negotiable instrument by reason of a discrepancy between the figures and the written words of the note as to the sum for which it is payable, the words rather than the figures stating its amount shall control. However, in the instant case, while such

discrepancy existed between the figures, stating its amount to be $1,283, and its words, stating it payable in the larger sum of $1,583, no ambiguity was created thereby either in the minds of Crider & Dunavent or in that of the appellant, as it knew at the time the note was executed that it was executed and intended to be the note of the appellee given for the payment of the latter's debt owing in the said amount to Crider & Dunavent, the payees thereof. Under such circumstances the appellant did not, upon the indorsement of the note to it, become the innocent holder of the note as one for $1,583 bought for $1,283, but, having knowledge of the circumstances and of the true sum for which it was intended to be made payable, received and held it as a note for the amount of $1,283 as stated by its figures. Therefore, when some five years later the appellee was notified to make payment of the balance due on the note and he inquired of the appellant as to what was the amount of same, it was the duty of the appellant to compute the amount owing upon the note as upon one payable in the sum of $1,283 rather than the larger amount for which it knew, or should have known, the note was not executed. The appellant states, through its treasurer, Mr. Hugh Allen, that at the time of informing the appellee that the balance owing by him was $834.24, such amount was computed by him upon the basis of the note being one for $1,583, as he did not then recall that the note had been purchased and received by the company some five years before as one executed and payable for the amount of $1,283, as stated by its figures, especially as the figures themselves had been changed so as to correspond with the written amount of the note, in words, as being for $1,583. However, the appellant throughout these five years had held in its possession both the note and the ledger accounts showing that the note was executed and later indorsed over to it as one in the sum of only $1,283 and was therefore chargeable with the duty of exercising a due dilgience in availing itself of its means of record information to accurately report to appellee the true amount then owing it by him. Such information was not equally available to the appellee, who had, during the intervening years up until 1932, made it some twenty or more installment and interest payments, by both checks and cash, which had been by appellant indorsed as credits upon the note it held, and constituted the only record of them. It was because of such fact that appellee, when notified in 1933 to pay the

balance owing, asked for a correct statement of it, as he was without this information, which the appellant possessed. It is admitted that upon receiving appellant's statement purporting to report his remaining indebtedness, Howard replied that he wished to settle it, but that, as he was without money with which to then pay this stated balance, that he would like to adjust it by selling a house and lot he had to appellant and giving it a new note payable in monthly installments for the part of the debt then remaining unsatisfied after the conveyance. Such arrangement for settling the note was reached when appellant, after inspecting the property, bought it at the agreed price of $650 and received appellee's deed therefor. It credited the stated balance of $834.24 with the $650 given for the property and took appellant's note for $184.24, as the balance then remaining due upon the note. Appellant thereupon returned Howard his original note, when he at once discovered that a mistake had been made through appellants overcharging him some $300 upon the note through treating it as one for $1,583 and interest thereon and that he had, through the installment payments made of $1,154.90 and the $650 paid with the lot, overpaid his debt of $1,283 and interest by the sum of $313.68, for which he asked repayment. Appellant refused to make a correction of its mistake in this way, as requested, but returned appellee's $184.24 note and offered to redeem him the $650 house and lot and take his secured note for $336.32, as the balance which would then be owing upon the original note.

Plaintiff, declining to accept such method of restitution of his overpayment to appellant, instituted suit for its recovery with the results stated, supra. Upon these admitted facts thus summarized, we entertain no doubt as to the propriety of the court's ruling in awarding appellee a judgment against the defendant for the overpayment by the evidence shown to have been made. The rule is well settled in this state that where money has been paid through a clear and palpable mistake of law or fact, essentially affecting the rights of the parties, which in law, honor, or good conscience was not due or payable, and which ought not to be retained by the party to whom it was paid, it may be recovered. City of Louisville v. Henning & Speed, 64 Ky. (1 Bush) 381; McMurtry v. Central R. Co., 84 Ky. 464, 1 S. W. 815, 8 Ky. Law Rep. 455; Underwood v. Brockman, 4

Dana, 310, 29 Am. Dec. 407; Ray v. Bank of Kentucky, 3 B. Mon. 513, 39 Am. Dec. 479; City of Covington v. Powell, 2 Metc. 228; Polites v. Barlin, 149 Ky. 376, 149 S. W. 828, 41 L. R. A. (N. S.) 1217.

Appellant's next claim is that the deed executed by appellee to it was bottomed upon a mutual mistake of parties and for such reason should be canceled. We do not, however, find that the admitted facts here before us support appellant's contention of the right to a cancellation of the deed upon the ground of its execution by mutual mistake. The evidence fails to show that the deed's execution was bottomed on a mutual mistake. The appellant, it is shown, was attempting to collect its debt against Howard and to such end bought his lot as a means of securing a payment on his debt in the amount of its agreed purchase price. Appellant declined plaintiff's first offer of the property at $750 but, after an inspection of it, agreed to buy it at $650. It is not claimed that any misrepresentations were made or fraud practiced in the sale and purchase of the property or that any mistake was made by either of the parties respecting the property in their contract for its sale. As to appellant's motive or reason for purchasing the property, that is not here involved nor is it material in determining appellant's right to a rescission of the parties' contract. The fact that the appellant might not have purchased the property or that the appellee might have been less willing to sell it had they been at the time of contracting correctly informed as to the amount of the indebtedness was not a material circumstance or fact affecting the validity and finality of their executed contract of sale and purchase of it. Further, if appellee acted under any mistake influencing him to sell the property, it was one caused by appellant's mistaken statement of his indebtedness, while if the deed to the property be considered as one made through appellant's mistake as to the amount of Howard's debt then owing it, the same would not be here pertinent as in such case it was a mistake caused by its own negligence in failing to avail itself of the means of information it had for ascertaining the correct amount of plaintiff's indebtedness to it. We do not find in our consideration of the series rather than the mutual mistakes made in the parties' transactions that they support appellant's argument that the deed in question was made and should be canceled because of the parties' alleged mutual mistake.

The applicable rule as to awarding the affirmative relief, here sought by appellant's counterclaim, of cancellation of the deed because of an alleged mistake made, is thus stated in 2 Pomeroy's Equity Jurisprudence (4th Ed.) 1747:

"If a mistake is made by one or both parties in reference to some fact which, though connected with the transaction, is merely incidental, and not a part of the very subject-matter, or essential to any of its terms, or if the complaining party fails to show that his conduct was in reality determined by it, in either case the mistake will not be ground for any relief affirmative or defensive. * * * In addition, * * * it has been said that equity would never give any relief from a mistake, if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed; * * *,"

And again in the case of Duff & Oney v. Rose, 149 Ky. 482, 149 S. W. 884, 887, relied on by both parties hereto, this court in discussing this subject of when equity will grant affirmative relief against a mistake, said:

"It seems to be the well-recognized rule that, in order that a mistake may come within the cognizance of a court of equity, it must be shown to be, first, material; second, mutual, or shared in by both parties to the transaction; third, unintentional; and, fourth, free from negligence."

The court further in its opinion quotes with approval the case of Hobson's Ex'r v. Commonwealth, 70 Ky. 649, as follows:

"It is a peculiar province of courts of equity to correct or to relieve against mistake; but such relief will not be granted to the party who caused the mistake, when to correct it would shift the loss upon another. McKee v. Hoover, 1 T. B. Mon. 34"

In the light of these authorities, it is clear that the law does not entitle appellant to the relief sought by its counterclaim because of its alleged mistake, arising out of its own negligence in failing to inform itself from its own records or means at hand as to the amount of appellee's indebtedness, and which mistake in overesti-

mating this balance it alleges induced it to buy this property only for the purpose of crediting its price upon its debt. Appellant, after having thus bought and become the owner of this property, has failed to show any facts or mistake made by it of such character as to bring it within the rule where equity in the furtherance of justice and the avoidance of unfair advantage or hardship will extend its affirmative relief of rescission, by directing the cancellation of a deed executed through mutual mistake or fraud. From this it follows that as the appellant was found in the light of such principles to be without right to a cancellation of the deed made it, it is also without the right to deduct the purchase price of the property from the payments made it by appellee. From this it results that there remained no part of the debt owing it by appellee to support its counterclaim, but rather only an obligation resting upon appellant to account to appellee for his overpayment of the debt, as adjudged.

The learned trial court's rulings being in harmony with our views as above indicated, its judgment is affirmed.