LIBERTY NATIONAL BANK AND TRUST COMPANY OF LOUISVILLE, Appellant,

v.

PEP SERVICES, INC., Appellee.

Court of Appeals of Kentucky.

March 16, 1979.

Leslie D. Aberson, Louisville, for appellant.

Dennis M. Clare, Louisville, for appellee.

Before HOWERTON, REYNOLDS and VANCE, JJ.

HOWERTON, Judge.

The appellant, Liberty Bank, appeals from a summary judgment dismissing its claim against Pep Services, Inc. for transactional errors between the bank's teller and an employee of Pep while the employee was obtaining cashier's checks for Pep payable to Gulf Oil Corporation. The facts are not disputed, and the basic question is who, as a matter of law, must bear the loss as between Liberty Bank and Pep.

Pep had an agreement with Gulf Oil Company to staff Gulf's gasoline stations, collect the money from the individual stations, and send that money to Gulf. In order to facilitate this agreement Pep worked out an arrangement with Liberty to deposit the money there and receive cashier's checks payable to Gulf. The problem began when an agent for Pep presented various receipts totaling $3,733.43 to Liberty. Liberty then gave the agent five separate cashier's checks payable to Gulf totaling $3,733.43, plus an additional check to Gulf for the amount of $3,733.43. Only $3,733.43 was deposited at that time. Gulf was given the entire sum of $7,466.86. Less than a month later, a Pep employee deposited with Liberty $1,798.80, and the bank issued two cashier's checks for $1,798.80 each. Gulf received both checks and credited Pep's account for $3,597.60. The court found that the total amounts paid to Gulf were due Gulf. For purposes of establishing the facts in this case, both parties apparently assume that the bank employee was negligent and the Pep employee, or employees, pocketed the difference between the amount given to the bank and the amount issued and given to Gulf in the cashier's checks. Both parties submitted the case to the trial court for summary judgment.

Liberty's argument is that it mistakenly issued additional cashier's checks for amounts it had not received, so that Gulf and Pep were unjustly enriched; therefore, equity requires that Pep return the money. Liberty cites *Allen Lumber Company v. Howard*, 254 Ky. 778, 72 S.W.2d 483 (1934). No one disputes that Liberty mistakenly wrote additional checks for money it had not received. However, Pep's account with Gulf Oil Company is now balanced. Therefore, if Pep were to return the additional money to Liberty, Pep would suffer a loss. There is no indication that Pep's employee was only given one-half of the amount due Gulf, and that the employee cheated the bank for and on behalf of the employer. The accepted fact is that both Liberty and Pep are innocent parties. Because of the mistake made by the bank's teller in issuing the additional checks for money not received, an agent of Pep was afforded an opportunity to abscond with money that was not deposited. As between two innocent parties, equity also provides the principle that "the decision should be against the party who has the weaker equity or the one who was in better position by reasonable diligence or care to have averted the loss which now must be borne by the one or the other." *Louisville Asphalt Company v. Cobb*, 310 Ky. 126, 129, 220 S.W.2d 110, 112 (1949). The trial court applied this principle and granted a summary judgment in favor of Pep. We are in agreement with the trial court's reasoning that "[t]o hold Pep Services, Inc. liable would call upon it to respond for the bank's error or negligence."

There being no genuine issues of material fact in dispute, and the trial court having applied the correct law, we affirm the summary judgment granted by the trial court. CR 56.

REYNOLDS, J., concurs.

VANCE, Judge, dissenting.

I do not believe Pep was entitled to a summary judgment. The parties tend to assume, although it was not proved, and the majority accept the assumption that the

issuance by the bank of cashiers checks in amounts greater than the sums deposited by Pep created a situation in which Pep's employee could abscond with money which belonged to Pep, and having created the situation the bank should be chargeable with it.

In the first place the assumption is not valid. Even if we indulge the assumption, not proved, that Pep's employee stole the money, there is absolutely no proof as to when the theft took place. For all we know he could have taken the money a week or a month before the bank issued the duplicate checks. He could have covered his shortage created by his conversion on one day with his collections from the stations the next day and thus covered up his theft for some time. Surely the bank could not be held responsible by reason of its inadvertent issuance of duplicate cashiers checks for a theft by Pep's employee which occurred before the duplicate checks were issued. It seems reasonable to me that there must be records which would show the exact amounts collected by Pep's employee from the various stations, the dates of such collections and the dates of deposit. Such an accounting might establish when the shortage occurred.

In the second place I feel that the bank should prevail under the factual situation assumed by the majority. It is not disputed that Pep's employee had authority to make deposits at the bank and to receive in exchange for the deposits cashiers checks made payable to Gulf Oil Corporation. The receipt of these cashiers checks by Pep's employee was in law a receipt by Pep. Thus, under the facts assumed by the majority Pep actually received cashiers checks from the bank for a greater amount of money than it deposited and Pep forwarded these checks to Gulf. Even if we assume that Pep's employee took advantage of this fortuitous situation by later collecting from the various stations and pocketing an amount equal to the overpayment by the bank, this would be nothing more than a theft by Pep's employee from his employer and the bank is not chargeable with the dishonesty of its customer's employees.

Inadvertent overpayments made under a mistake as to the facts may be recovered by the payor. *Phoenix Indemnity Company v. Steiden Stores*, Ky., 267 S.W.2d 733 (1954).

Of course, it is possible that the extra checks were issued because of some complicity of a bank employee, but that is certainly not admitted here and could not be the basis for summary judgment.

I would reverse the summary judgment and remand for further proceedings on the merits.