NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0556n.06

No. 09-6456

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 10, 2011*

LEONARD GREEN, Clerk

FIFTH THIRD BANK,                                )
                                                 )        ON APPEAL FROM THE
        Plaintiff-Appellee,                      )        UNITED STATES DISTRICT
                                                 )        C O U R T   F O R   T H E
v.                                               )        WESTERN DISTRICT OF
                                                 )        KENTUCKY
LINCOLN  FINANCIAL  SECURITIES
CORPORATION,                                              O P I N I O N

        Defendant-Appellant.

BEFORE:    KENNEDY, SILER, and McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.** Fifth Third Bank sued Lincoln Financial Securities Corporation, alleging that Lincoln Financial breached an Account Control Agreement, pursuant to which Lincoln Financial had waived its rights in a brokerage account held by Shaun and Chandra Schneider. Lincoln Financial and Fifth Third filed cross-motions for summary judgment, following which the district court denied Lincoln Financial's motion, granted Fifth Third's motion, and awarded a monetary judgment in favor of Fifth Third. Lincoln Financial appealed, challenging the district court's order on numerous grounds. Finding that Lincoln Financial's claims are either waived or without merit, we affirm.

## I. BACKGROUND

In November 2005, Schneider Consulting, LLC sought to obtain a $3 million loan from Fifth Third Bank ("Fifth Third"). To secure the loan, Fifth Third required Shaun and Chandra Schneider to pledge securities they held in a brokerage account managed by Lincoln Financial Securities Corporation ("Lincoln Financial").[1] To pledge these securities, the Schneiders executed a Brokerage Account Pledge and Security Agreement on December 21, 2005, which secured the master note in the principal loan amount of $3 million in favor of Fifth Third. The loan proceeds were disbursed the next day, on December 22, 2005.

At the time the loan was funded, no one from Fifth Third had communicated with anyone from Lincoln Financial. However, subsequent to disbursement, in order to perfect Fifth Third's interest in the securities in the brokerage account, an Account Control Agreement ("the Agreement") was executed by Fifth Third, Lincoln Financial, and the Schneiders. Initially, Fifth Third mailed the Agreement to Lincoln Financial for signature, but Lincoln Financial rejected the Agreement because it did not contain specific boilerplate language required by Lincoln Financial, there was a question about an account number, and the balance reflected in the Agreement was higher than the $400,000 balance reflected in Lincoln Financial's records. Lincoln Financial sent the Agreement back for revisions, and Fifth Third's Vice President for Commercial Lending, Rob Bingham, contacted Shaun Schneider about the problems with the Agreement on December 29, 2005.

---

[1]The original defendant to this action was Jefferson Pilot Securities Corporation. However, Jefferson merged with Lincoln National Corporation and changed the name of Jefferson Pilot to Lincoln Financial Securities Corporation. Thus, the corporate entity remained the same and only the name changed. As such, we will address the defendant as Lincoln Financial.

That same day, Shaun Schneider delivered a check for $2.8 million to Jeremy Tincher, a Lincoln Financial registered representative and Schneider's broker. The next day, Tincher overnighted the check to Lincoln Financial. Tincher also emailed Bingham the language Lincoln Financial required to be in the Agreement, which Tincher had received in an email from Anne Jones, Lincoln Financial's Manager of Brokerage Services. A few days later, on January 3, 2006, Tincher again emailed Bingham, informing him that he should use a new account number and that the estimated value of the account as of that date was $3,211,000. After the changes were made, the revised agreement was signed by the Schneiders and Fifth Third and sent back to Lincoln Financial. Bingham spoke directly to Jones, who confirmed that she had received the Agreement, that the account was valued at $3.2 million, and that a $2.8 million check had been deposited by Shaun Schneider.

The final version of the Agreement, which is governed by Kentucky law, stated that Lincoln Financial "represent[ed] and warrant[ed] to [the Schneiders] and [Fifth Third] that (a) the Brokerage Account has been established in the name of" the Schneiders and that "the total market value of the property of the Brokerage Account is at least" $3,211,000 as of January 3, 2006. The Agreement also stated that there were no distributions from the Brokerage Account between January 3 and January 10, 2006, and that "except for the claims and interest of [the Schneiders] and [Fifth Third] in the Brokerage Account, [Lincoln Financial] does not know of any claim to or interest in the Brokerage Account or in any financial asset carried therein." The Agreement also prevented Lincoln

Financial from making withdrawals from the account on behalf of or at the request of the Schneiders without the prior written consent of Fifth Third.

Additionally, the Agreement contained a section entitled "Priority of Lien," which stated that Lincoln Financial would "not advance any margin or other credit to [the Schneiders] therein that would have the effect of decreasing the total market value of the property in the Brokerage Account below" the stated value of $3.2 million. Further, Lincoln Financial "waive[d] and release[d] all liens, encumbrances, claims and rights of setoff it may have against the Brokerage Account or any financial asset carried in the Brokerage Account or any credit balance in the Brokerage Account." Lincoln Financial also agreed that, "except for payment of its customary fees and commission pursuant to the Brokerage Agreement, it [would] not assert any such lien, encumbrance, claim or right of the priority thereof against the Brokerage Account or any financial asset carried in the Brokerage Account or any credit balance in the Brokerage Account." Subject to the above restrictions, Lincoln Financial was permitted to "make trades of financial assets held in the Brokerage Account at the instruction of [the Schneiders], or their authorized representatives . . . ." However, any transfer of assets out of the account, including securities, could only be done upon receipt of a letter of instruction signed by Fifth Third and the Schneiders. The Agreement was signed by the parties on January 9, 2006, though it designated December 21, 2005 as the date it became effective.

At the time the Agreement was signed, the brokerage account showed a balance of over $3.2 million, most of which was due to the large amount of securities purchased with the $2.8 million

check written by the Schneiders. Michael Murray, Vice President of Lincoln Financial, testified that

after the securities were purchased and the value added to the account, the Schneiders' check was

returned due to insufficient funds. After being notified by Lincoln Financial, the Schneiders

deposited another check to cover the purchase of the securities. That check, however, was also

returned because of insufficient funds.

When Lincoln Financial realized that Pershing, the trade clearing firm that executed trades

on behalf of Lincoln Financial, did not have sufficient funds to cover the purchase of securities for

the Schneiders, Lincoln Financial had three options. One option was to exhaust available Regulation

T extensions to extend the time in which the Schneiders could deposit sufficient funds for the

purchase of the securities. However, because all Regulation T extension requests had already been

exhausted, Lincoln Financial had to choose between its remaining two options: ordering a

cancellation of the trades or purchasing the securities itself. The district court aptly summarized

what followed:

> To satisfy its obligations to Pershing, Lincoln Financial immediately ordered the
> cancellation of the trades and adjusted the brokerage account balance to reflect the
> cancelled transactions. Mr. Murray testified that to "cancel the trades" means to
> "reverse, cancel, bust the transactions within the client account." Lincoln Financial
> represents that it explicitly retained the right to reverse unfunded trades within its
> clients' accounts pursuant to Section 13(I)(g) of the Brokerage New Account Form
> executed between it and the Schneiders which provides: "If upon the purchase/sale
> of securities by [Lincoln Financial] at your direction, you fail to pay for or deliver
> monies or securities, you authorize [Lincoln Financial] to take steps necessary to pay
> for/deliver such monies or securities. You further agree to reimburse [Lincoln
> Financial] for any loss it may sustain on your behalf."

> By cancelling the Schneider trades, the balance in the Schneider account fell from at least $3,211,000 to approximately $450,000. Lincoln Financial states that Fifth Third Bank's agent, Rob Bingham, was notified. During this time, Lincoln Financial states that Mr. Schneider also informed Lincoln Financial that he was under investigation for bank fraud. On January 19, 2006, the Federal Bureau of Investigations ("FBI") issued a Freeze Order on the brokerage account. Lincoln Financial through Pershing liquidated and transferred the assets in the subject brokerage account to the United States Marshals Service pursuant to an order of the FBI.

> Subsequently, Schneider Consulting defaulted on its loan with Fifth Third Bank. By letter dated February 3, 2006, Fifth Third Bank directed Lincoln Financial to liquidate the balance of the brokerage account to satisfy the loan pursuant to the Account Control Agreement. In 2007, Fifth Third Bank received two liquidation payments from Lincoln Financial in the total amount of $466,308.01. Fifth Third Bank was also notified that it will receive an additional $17,610.92 from the account.

*Fifth Third Bank v. Lincoln Fin. Sec. Corp.*, No. 4:06CV-122-M, 2009 WL 2523444, at *3 (W.D. Ky. Aug. 18, 2009) (internal footnote omitted).

Fifth Third filed a complaint in the Daviess Circuit Court in Kentucky alleging breach of contract by Lincoln Financial. The complaint was removed by Lincoln Financial to the United States District Court for the Western District of Kentucky. Shortly thereafter, Fifth Third filed a motion for summary judgment, which was denied without prejudice as premature. *Fifth Third Bank v. Jefferson Pilot Sec. Corp.*, No. 4:06-cv-00122 (W.D. Ky. Mar. 9, 2007).

After engaging in extensive discovery, Lincoln Financial then filed its own motion for summary judgment arguing that it was not responsible for Fifth Third's loss, which was instead caused by the Schneiders' fraudulent scheme and "Fifth Third's own failure to verify the accuracy of Schneider's representations." Lincoln Financial argued that it accurately reported the amount in

the Schneiders' account at the time it signed the Agreement, as it had no knowledge of the Schneiders' fraud or that the check deposited by the Schneiders was actually worthless. Moreover, it asserted that because the loan closed prior to the signing of the Agreement, there was no way that Fifth Third could have relied on the Agreement when it decided to approve the Schneiders' loan, and therefore Lincoln Financial could not be liable for misrepresentation. Additionally, Lincoln Financial claimed that it was not vicariously liable for any acts taken by Tincher, who initiated the Schneiders' securities trade, because he was an independent broker and Kentucky law precluded the imposition of vicarious liability for the tortious conduct of independent contractors. Finally, Lincoln Financial alleged that Fifth Third's breach of contract claim was unsupported, because the Agreement was "not a guaranty for Schneider's loan" and it did "not set forth specific obligations for the surrender or liquidation of the Schneider brokerage account upon default on [the] Fifth Third loan." Instead, all that was required by the Agreement was for Lincoln Financial to turn over control of the brokerage account to Fifth Third in the event of default by the Schneiders. Thus, Lincoln Financial claimed that even assuming a breach had occurred, Fifth Third could show no damage resulting from the breach because Lincoln Financial released the entire balance of the account; the fact that the account "was less valuable than Fifth Third expected resulted from Schneider's fraudulent scheme, not any alleged breach by [Lincoln Financial]."

Fifth Third filed a response to Lincoln Financial's motion that also served as its own second motion for summary judgment, in which it argued that Lincoln Financial had breached the Agreement when it (1) refused to liquidate the account upon receipt of the Notice of Exclusive

Control from Fifth Third, (2) represented and warranted an incorrect balance in the Schneiders' account, and (3) reversed the trades in the Schneiders' account without Fifth Third's permission. In response to Lincoln Financial's motion, Fifth Third clarified that although Lincoln Financial addressed a purported misrepresentation claim, no such claim was actually brought by Fifth Third.

In its response to Fifth Third's motion for summary judgment, Lincoln Financial asserted that: (1) the Agreement was unenforceable because there was no consideration and there was a lack of mutuality of obligation; (2) the contract must be rescinded on the basis of mutual mistake, because both parties believed that the Schneiders had the claimed financial resources that did not actually exist; and (3) the agreement was subject to rescission based on the Schneiders' fraud. As to the merits of the claim of breach, Lincoln Financial argued that (1) it never misrepresented the balance in the Schneiders' account; (2) there was nothing within the Agreement that prevented Lincoln Financial from reversing the trades within the Schneiders' account, because the terms of the Agreement permitted it to make trades of financial assets held in the brokerage account at the Schneiders' instruction until Fifth Third exercised exclusive control over the account; and (3) it never refused to liquidate the account. It further argued in its sur-reply that at no time did it or the Schneiders ever own the securities in question, asserting that Pershing, its clearing firm, retained ownership of the securities while awaiting the clearance of the Schneiders' check.

After the motions were fully briefed, the district court issued an opinion granting Fifth Third's motion for summary judgment and likewise denying Lincoln Financial's motion. *Fifth Third Bank*, 2009 WL 2523444, at *10. The court determined that at the time the Agreement was signed,

the value of the account was at least $3.2 million, because the securities had been purchased and placed in the account. *Id.* Once that occurred, Lincoln Financial waived and released all claims or rights of setoff against those assets and had no authority to remove them when the Schneiders' check bounced. *Id.* Accordingly, the court concluded that by canceling the trades, Lincoln Financial breached the Agreement.[2] *Id.* The court also found that the Agreement was supported by consideration, that mutuality of obligation existed, and that there was no mutual mistake or fraud sufficient to warrant rescission. *Id*. at *7–10.

After judgment was entered, Lincoln Financial filed a motion to alter the judgment pursuant to Federal Rule of Civil Procedure 59, arguing that the court improperly interpreted the express language of the Agreement, that Section 3 of the Agreement did not preclude all trading within the Schneiders' account, that Lincoln Financial had not waived its right to cancel unfunded trades, and that the damages award was improperly calculated. Lincoln Financial also argued that the district court erred by adjudicating the reasonableness of its reliance on the Schneiders' check, in deciding that Lincoln Financial negligently failed to ascertain the "mistake" in the Schneiders' check and did not exercise ordinary diligence, in failing to interpret the Agreement as requiring only Lincoln Financial's "best efforts," and in determining that sufficient consideration supported the Agreement.

---

[2]The court also addressed Lincoln Financial's argument that it did not own the securities, and explained that this did not defeat the determination that Lincoln Financial breached the contract because, if true, it would support Fifth Third's claim of breach by representing that the account value was at least $3.2 million. *Fifth Third Bank*, 2009 WL 5253444, at *6.

In response, Fifth Third conceded that the court had used an incorrect principal amount to calculate damages, and the court ordered the parties to file supplemental briefs regarding the proposed judgment. However, it also determined that, "[w]ith the exception of the argument related to the judgment amount, the arguments raised in [Lincoln Financial's] motion to reconsider were either previously advanced by [Lincoln Financial] and addressed by the Court or could have been advanced in [Lincoln Financial's] original motion and response." *Fifth Third Bank v. Lincoln Fin. Sec. Corp.*, No. 4:06CV-122-M (W.D. Ky. November 4, 2009). In a January 4, 2010 order, the district court concluded that an amended judgment was appropriate and awarded judgment in favor of Fifth Third in the amount of $2,867,058.96, which included all prejudgment interest, late fees, and postjudgment interest. Lincoln Financial then filed a timely notice of appeal.

## II. ANALYSIS

### A. Waiver

As an initial matter, Lincoln Financial raises a number of issues that Fifth Third asserts have been waived on appeal. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (explaining that under the "traditional rules regarding the waiver of issues" on appeal, "an argument not raised before the district court is waived on appeal to this Court"). "[T]his general policy is justified by two main policy goals: 'First, the rule eases appellate review by having the district court first consider the issue. Second, the rule ensures fairness to litigants by preventing surprise issues from appearing on

appeal.'" *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009) (quoting *Scottsdale Ins. Co*, 513 F.3d at 552).

Certain exceptions apply, however, and this court has "'deviated from the general rule in exceptional cases or particular circumstances or when the rule would produce a plain miscarriage of justice.'" *Scottsdale Ins. Co.*, 513 F.3d at 552 (quoting *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)). This circuit's leading case on the matter is *Pinney Dock & Transport Co. v. Penn Central Corporation,* 838 F.2d 1445 (6th Cir.1988). In *Pinney*, this court explained that the rule is not jurisdictional, but rather is a rule of procedure under which exceptions are permissible in limited circumstances and are left to the discretion of the courts of appeals based on the facts of individual cases. *Id.* at 1461.

In deciding whether to exercise its discretion to hear a matter raised for the first time on appeal, this court is guided by the following factors:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Scottsdale Ins. Co.*, 513 F.3d at 552 (quoting *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996)); *see also Fairlane Car Wash, Inc. v. Knight Enters., Inc.*, 396 F. App'x 281, 286 (6th Cir. 2010) (explaining that this court "may reach an issue that is presented with sufficient clarity and completeness," typically "where the issue is one of law, and further development of the record is unnecessary," or where addressing the issue "would serve an overarching purpose other than

simply reaching the correct result in this case," such as "where the state of the law is uncertain")

(internal quotation marks omitted). However, we have "rarely exercised such discretion." *Scottsdale*

*Ins. Co.*, 513 F.3d at 552. In fact, this court has "reiterated that the exceptions to the general rule are

narrow and intended to promote finality in litigation." *In re Morris*, 260 F.3d 654, 664 (6th Cir.

2001); *see also Foster*, 6 F.3d 407 (noting that "[t]he exceptions to the general rule are narrow").

Instead, this court has "generally focused on whether the issue was properly raised before the district

court." *Scottsdale Ins. Co.*, 513 F.3d at 553.

### 1. Failure to Disclose

Lincoln Financial first argues that the district court erred when it failed to find that a genuine

issue of material fact existed regarding Fifth Third's failure to disclose to Lincoln Financial an email

that suggested that Shaun Schneider might be engaged in fraud.[3] Lincoln Financial asserts that

because of the email, Fifth Third knew prior to Lincoln Financial executing the Agreement that the

Schneiders misrepresented the value of the brokerage account and that Fifth Third would have

known that the Schneiders were engaged in fraud if they had done at least a "cursory investigation."

So, argues Lincoln Financial, it is reasonable to infer that Fifth Third did not disclose this

information in order to secure Lincoln Financial's execution of the Agreement. Further, Lincoln

Financial asserts that "[i]f Fifth Third had a duty to disclose information of this nature to Lincoln,

---

[3]According to Bingham's deposition, he received an email approximately five days before the Agreement was signed, which was sent anonymously and contained a warning about a "potential" Fifth Third borrower that Bingham understood to mean Shaun Schneider.

material issues of fact existed" regarding whether Fifth Third acted in good faith and in accordance with reasonable standards of fair dealing.

As Fifth Third correctly argues, Lincoln Financial did not properly raise this argument in the district court. Lincoln Financial did reference the email in its statement of undisputed facts in its motion for summary judgment. Lincoln Financial also stated in its motion that the loss at issue was "the consequence of Schneider's fraudulent scheme and Fifth Third's own failure to verify the accuracy of Schneider's representations." However, in that very same motion, Lincoln Financial contradictorily stated that the Schneiders were "misleading not only Fifth Third, but [Lincoln Financial] as well." It was not until Lincoln Financial filed its reply in support of its Rule 59 motion that it presented a legal argument regarding Fifth Third's alleged duty to disclose the email and assert that Fifth Third did not act reasonably after it became aware of "red flags." As this court has previously explained, though it has "never articulated precisely what constitutes raising an issue with the district court, we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses," as occurred here. *Scottsdale Ins. Co.*, 513 F.3d at 553. Moreover, this issue does not fall within the exception to the general rule of waiver because, as Lincoln Financial acknowledges in its reply brief to both its Rule 59 motion and its brief on appeal, resolution of this issue is not "clear beyond doubt" and would require determinations of material facts. *Scottsdale Ins. Co.*, 513 F.3d at 552.

## 2. Causal Relationship Between Breach and Damages

Next, Lincoln Financial argues that the district court erred in finding that a causal relationship existed between Lincoln Financial's breach and Fifth Third's claimed damages. Specifically,

Lincoln Financial argues that even if it breached the Agreement, it was "Fifth Third's own negligence [that] resulted in its loss well before Lincoln executed the Agreement," because Fifth Third disbursed the loan proceeds prior to execution of the Agreement and without verifying the value of the property in the Schneiders' account. Thus, according to Lincoln Financial, Fifth Third's damages did not arise from Lincoln Financial's alleged breach.

This claim too has been waived by Lincoln Financial. As noted, Lincoln Financial asserted conclusorily in its motion for summary judgment that Fifth Third's loss was the result of both the Schneiders' fraud and Fifth Third's "own failure to verify the accuracy of Schneider's representations." However, it failed to elaborate on this statement or provide any argument in support of it. Instead, Lincoln Financial argued that it was not obligated to pay Fifth Third any amount "beyond the actual value of the Schneider account" and that once that amount was released, Fifth Third could not claim any resulting damages. Lincoln Financial argues in its reply brief to this court that it did raise this claim, citing to a section in its reply filed in support of its motion for summary judgment in the district court, where it asserted that there was no consideration to support the Agreement and thus no reliance "upon the alleged warranty in order to support" an "alleged 'warranty' claim" against it. Even assuming this is sufficient to have raised the argument before the district court, it was not raised until Lincoln Financial's reply, which would still result in waiver. *See Scottsdale Ins. Co.*, 513 F.3d at 553.

### 3. Mitigation and "Best Efforts"

Lincoln Financial also argues that the district court erred in its conclusion that there was no genuine issue of material fact regarding Fifth Third's alleged failure to mitigate its damages. This

claim was not raised in any of Lincoln Financial's pleadings in the district court, and Lincoln Financial does not respond to or challenge Fifth Third's assertion of waiver in its reply brief on appeal. Additionally, Lincoln Financial argued that the district court erred when it failed to consider the language of the Agreement requiring that Lincoln Financial use only its "best efforts." However, this argument was raised for the first time in Lincoln Financial's Rule 59 motion, and Lincoln Financial does not dispute in its reply brief the allegation that it waived this claim.[4] Accordingly, these claims are also waived on appeal.

### 4. Cancellation of Trades as Breach

In the final claim alleged waived by Fifth Third, Lincoln Financial argues that the district court erred when it determined that Lincoln Financial's cancellation of the Schneiders' securities purchase amounted to a breach of the Agreement. First, Lincoln Financial asserts that its cancellation of the Schneiders' unfunded purchase order "was a normal trading activity, not a claim or setoff against the account for the benefit of Lincoln or Pershing." Second, Lincoln Financial alleges that the court erred when it "summarily adjudicat[ed] whether the parties intended the Agreement to apply to the unfunded securities," asserting that there is a latent ambiguity in the language of the Agreement as to whether the parties intended for Lincoln Financial to waive its practice of canceling unfunded trade orders. While Lincoln Financial did argue before the district

---

[4] Lincoln Financial did note in its reply in support of its motion for summary judgment that its liability was limited, and it cited to the Agreement and the fact that Lincoln Financial received no compensation, that it had no liability for making trades, and that its obligations were limited to "best efforts." However, it did not put forth any additional argument on this point sufficient to constitute raising the claim before the district court.

court that the cancellation of securities did not amount to a breach of the Agreement, it did not at any time argue that the Agreement was ambiguous regarding the cancellation of trades. In fact, in all of its briefs submitted to the district court, Lincoln Financial argued that the language of the Agreement was clear in permitting Lincoln Financial to make the "trades" it did with the Schneiders' account. Accordingly, while we may address the first part of Lincoln Financial's claim, the second part of Lincoln Financial's argument is waived.

As for the waiver exception, there is no support to apply the exception to any of Lincoln Financial's claims that are otherwise waived. Because Lincoln Financial failed to properly raise these issues before the district court, Fifth Third was not given an opportunity to respond to these arguments. Moreover, the resolution of these issues is not clear beyond a doubt, certain issues would necessitate making factual determinations, and failure to take up the issues on appeal will not result in a miscarriage of justice or a denial of substantial justice. *See Scottsdale Ins. Co.*, 513 F.3d at 552; *see also Rice*, 578 F.3d at 454. Accordingly, we consider only the merits of the remaining issues discussed below.

**B. Motion for Summary Judgment**

When parties file cross-motions for summary judgment, on appeal this court is "require[d] [] to 'evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party.'" *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 264 (6th Cir. 2010) (quoting *Beck v. City of Cleveland,* 390 F.3d 912, 917 (6th Cir. 2004)). "'In reviewing a grant of summary judgment on cross-motions seeking such relief, we apply

the same legal standards as the district court: whether, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law.'" *In re Arctic Exp. Inc.*, 636 F.3d 781, 791 (6th Cir. 2011) (quoting *United States v. Petroff–Kline,* 557 F.3d 285, 290 (6th Cir. 2009)). We review the district court's order granting summary judgment de novo. *Travelers Prop. Cas. Co. of Am.*, 598 F.3d at 264.

### 1. Consideration and Mutuality of Obligation

Of those issues remaining that have not been waived, Lincoln Financial first argues that the Account Control Agreement was not supported by consideration. Under Kentucky law, "[c]onsideration" is '[a] benefit to the party promising, or a loss or detriment to the party to whom the promise is made.'" *Smith v. Bethlehem Sand & Gravel Co., LLC*, –S.W.3d–, 2011 WL 1515180, at *4 (Ky. Ct. App. Apr. 22, 2011) (quoting *Phillips v. Phillips*, 171 S.W.2d 458, 464 (Ky. 1943)). "[G]enerally speaking, a substantial failure of consideration ordinarily justifies rescission of a contract." *Id.*

The district court concluded that sufficient consideration existed to support the Agreement because Lincoln Financial executed the Agreement "[a]t the request and for the benefit of its customers" and, in exchange for its promise to represent the value of the account and waive its rights of setoff against the account, Lincoln Financial "retained its customers and continued to receive the corresponding fees and commissions payable under the brokerage account agreement." *Fifth Third Bank*, 2009 WL 2523444, at *7. Lincoln Financial, however, argues on appeal that there is no

evidence that Schneider would or could have transferred his account from Lincoln Financial if it had not executed the Agreement and that, absent such evidence, the district court's conclusion improperly "imputed consideration to the Agreement based on speculation."  Correspondingly, Lincoln Financial argues that there was no mutuality of obligation because "Fifth Third did not assume any legal obligation or liability to Lincoln under the Agreement."

Although the district court and Lincoln Financial addressed the issue of consideration as it pertains to Lincoln Financial's customer retention and receipt of fees and commissions, Kentucky law actually provides stronger grounds for finding that consideration existed to support the Agreement. *See City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994) (noting that this court "may affirm on any grounds supported by the record, even though they may be different from the grounds relied on by the district court").  As the Kentucky courts have explained:

> If consideration is sufficient for a contract in other respects, it does not matter from or to whom it moves.  The consideration may move to the promisor or a third person, and may be given by the promisee or a third person.  To constitute consideration, it is not necessary that a benefit should accrue to the promisor; it is sufficient that something valuable flows from the person to whom the promise is made and that the promise is the inducement to the transaction.

*Whitaker Bank, Inc. v. First Nat'l Bank and Trust of London*, No.  2007-CA-000688-MR, 2008 WL 3165251, at *2 (Ky. Ct. App. Aug. 8, 2008) (quoting Am. Jur. 2d § 113); *cf. Simpson v. JOC Coal, Inc.*, 677 S.W.2d 305, 307–08 (Ky. 1984) (explaining that a third party for whose benefit a contract is made may maintain an action pursuant to that contract, provided the third party was "a party to the consideration").  Furthermore, "'[c]onsideration to support a promise need not even involve a benefit to the promisor; it is sufficient if the benefit is derived solely by a third person or consists only of

detriment to the person to whom the promise is made.'" *Whitaker Bank, Inc.*, 2008 WL 3165251, at *2 (quoting Am. Jur. 2d § 117).

Here, the Schneiders obtained the benefit of the proceeds of the loan and, in order to perfect Fifth Third's security interest in the brokerage account, they requested that Lincoln Financial execute the Agreement. By executing the Agreement at the Schneiders' request, the Schneiders granted an interest in the account to Fifth Third that was supported by the consideration they received in the form of the loan. Furthermore, once consideration was "found to be present, mutuality of obligation is not required." *Ramler v. Spartan Constr. Inc.*, No. 2002-CA-001646-MR, 2003 WL 22064334, at *5 (Ky. Ct. App. Sept. 5, 2003). Accordingly, the district court did not err in finding that the Agreement was supported by consideration.

### 2. Mutual Mistake

Next, Lincoln Financial argues that the district court erred when it concluded that there was no mutual mistake regarding the sufficiency of the assets in the brokerage account, and asserts that the Agreement should have been voided. Additionally, Lincoln Financial claims that in resolving the mutual mistake claim, the court improperly concluded that Lincoln Financial acted unreasonably, negligently failed to ascertain the mistake regarding the assets in the account, and assumed the risk of loss by treating the uncleared check as sufficient.

In Kentucky, where a party seeks to vary the terms of a writing on the ground of mutual mistake, it must establish: (1) that the mistake was mutual, not unilateral; (2) proof of the mutual mistake "beyond a reasonable controversy by *clear and convincing evidence*"; and (3) that "the

parties had actually agreed upon terms different from those expressed in the written instrument." *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 704 (Ky. 2006) (internal quotation marks omitted). However, where one party has acted negligently in failing to ascertain the facts or obtain the information that could have corrected the mistake, that party is not entitled to relief. *See Allen Lumber Co. v. Howard*, 72 S.W.2d 483, 487–88 (Ky. Ct. App. 1934).

Lincoln Financial asserts that both parties were operating under a mutual mistake regarding the Schneiders' ability to fund the brokerage account such that its value exceeded the $3 million loan. However, the record demonstrates that Lincoln Financial was the only party operating under a mistake. Here, pursuant to the very terms of the Agreement, Lincoln Financial was responsible for warranting the value of the Schneiders' brokerage account to Fifth Third. In order to do so, Lincoln Financial needed to know that the funds provided by the Schneiders were sufficient to purchase the securities that made up the majority of the $3.2 million in the account. Yet, at the time it signed the Agreement and represented the sufficiency of the funds in the Schneiders' account, Lincoln knew that the check had not yet cleared. Lincoln Financial failed, however, to disclose this information to Fifth Third and still executed the Agreement. Thus, Lincoln Financial alone operated under a mistake, and therefore it was not entitled to rescission on the basis of mutual mistake.

Lincoln Financial also argues that the district court improperly concluded that Lincoln Financial acted unreasonably and negligently failed to ascertain the mistake regarding the assets in the account, and in doing so it assumed the risk of loss by treating the uncleared check as sufficient. Because we find that the district court properly determined that there was only a unilateral mistake,

and thus Lincoln Financial was not entitled to relief on the basis of mutual mistake, there is no need to address whether Lincoln Financial was negligent in failing to obtain the information that could have remedied its mistake. Moreover, even if we were to address it, Lincoln Financial's claim is without merit. Lincoln Financial argues that it was reasonable for it to accept the Schneiders' check because regulations governing such purchases permit securities brokers to accept checks as immediate payment. However, even assuming that accepting the Schneiders' check and *purchasing* the securities immediately was reasonable, it cannot be said that Lincoln Financial did not act negligently by *warranting* the value of the Schneiders' account before confirming that the securities representing the bulk of that value had been paid for with sufficient funds. In representing the value of the account without any exception or limitation, Lincoln Financial assumed the risk that the funds would be insufficient.

### 3. Breach

Finally, Lincoln Financial argues that the district court erred in determining that it breached the Agreement when it canceled the unfunded purchase order of securities. Under Kentucky law, "[t]o prove a breach of contract, the complainant must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). "It is well settled that the interpretation of contracts is an issue of law for the court to decide." *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006). In so deciding, "[t]he intention of the parties to a written instrument must be gathered from the four corners of that instrument." *Id.*

As an initial matter, Lincoln Financial continues to assert on appeal that the securities "never settled" in the account and the Schneiders never owned the securities that made up most of the value of the brokerage account, and therefore the true value of the account was that which was left after the trades were canceled and the securities sold. However, Lincoln Financial warranted in the Agreement that the Schneiders' account was worth over $3.2 million, which was primarily based on the crediting of the securities to the Schneiders' account. And, as Lincoln Financial's Vice President Michael Murray stated at his deposition, when Pershing executes a trade on behalf of Lincoln Financial, the securities are considered purchased as of the date of the trade and the client's account is credited even if the funds to purchase the securities have not cleared. Accordingly, regardless of who may have owned the securities at the time the Agreement was signed, they had been credited to the Schneiders' account, as Lincoln Financial so represented in the Agreement.

Further, rather than absolving Lincoln Financial from liability for breach, its argument that the Schneiders never owned the securities actually evidences Lincoln Financial's breach of the Agreement. Specifically, Lincoln Financial represented and warranted in the Agreement that "except for the claims and interest of [the Schneiders] and [Fifth Third] in the Brokerage Account, [Lincoln Financial][did] not know of any claim to or interest in the Brokerage Account or in any financial asset carried therein." Yet, Lincoln Financial admits that despite the credit to the Schneiders' account, actual ownership of the securities was retained by Pershing and, in the event the funds to purchase the securities were insufficient, Lincoln Financial would be responsible to Pershing for the purchases made within the Schneiders' account. As Murray explained, if a client failed to properly fund a trade, Lincoln Financial would either have to pay Pershing or reverse the trades. However,

he explained that when a trade is not paid, Lincoln Financial's policy is to order the sale of those securities so that it would not have to purchase the securities itself. In other words, Lincoln Financial knew at the time it signed the Agreement that it had an interest in the securities in the Schneiders' account and that, if the Schneiders' funds were insufficient, it had a claim in the account to the extent it would order sale of the securities if they otherwise were not paid for by the Schneiders. By warranting that no claims or interest existed in the account or the assets therein, when Lincoln Financial knew it had its own interest in those securities and that it would (and later did) assert a claim by ordering sale of the securities upon finding that the funds were insufficient, Lincoln Financial breached the Agreement.

Moreover, even accepting Lincoln Financial's argument that the securities were never owned by the Schneiders and therefore were not held in the brokerage account, Lincoln Financial's order to Pershing to cancel the trade and sell the securities also would have violated the terms of the Agreement. Under Section 3, Lincoln Financial was not permitted to "execut[e] sell orders on securities not held in the Brokerage Account." Its cancellation order then would have directly resulted in a breach of the Agreement. As such, the district court did not err in finding that Lincoln Financial breached the Agreement when it canceled the trade and ordered sale of the securities.

### III. CONCLUSION

For the foregoing reasons, we find that Lincoln Financial waived the majority of its arguments for failure to properly raise them before the district court, and we AFFIRM the district court's order on the remaining claims properly before this court on appeal.